**WESTERN KRAFT PAPER GROUP A Division of Willamette Industries, Inc., an Oregon Corporation, Appellant,**

v.

**DEPARTMENT FOR NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION and Kentucky Utilities Company, Appellees.**

Court of Appeals of Kentucky.

Sept. 18, 1981.

As Modified on Denial of Rehearing Jan. 15, 1982.

Discretionary Review Denied May 18, 1982.

Dandridge F. Walton, Frankfort, Douglas M. Ragen, Portland, for appellant.

Valerie L. Salven, Robert Yarbrough, Dept. for Natural Resources and Environmental Protection, Frankfort, Richard F. Newell, Ernest W. Williams, Louisville, for Kentucky Utilities Co.

Before WHITE, WILHOIT and WINTERSHEIMER, JJ.

WINTERSHEIMER, Judge.

This appeal is from an order and judgment entered December 2, 1980, which affirmed an order of the Natural Resources and Environmental Protection Department, which reserved air increments in Hancock County in favor of Kentucky Utilities over the objections of Western Kraft Paper.

The issues are the authority of the Department to reverse a prior determination and the proper procedure to be followed for a utility to secure environmental permits for construction of new power plants.

Western Kraft argues that the utility must first apply for a certificate of convenience and necessity before seeking an environmental permit. They also contend that the agency cannot reverse its own prior orders.

On July 27, 1978, Kentucky Utilities filed an application for Prevention of Significant Deterioration (PSD) review by the Department in connection with the construction of a two unit 1,300 megawatt electric generating plant near the Western Kraft paper and pulp plant. In August, 1978, the air increment for Hancock County was reserved for the proposed electric plant. On July 26, 1979, the Department suspended this reservation of the PSD increment until the requirements of KRS 278.020(3) were met, or until it could be established that this law does not apply. After a conference with the Department's secretary, counsel and staff, a letter was issued on August 22, 1979, determining that the construction of a utility plant did not require a certificate of

convenience and necessity prior to application for state and federal environmental authorizations. Consequently the suspension imposed on July 26, 1979, was withdrawn and its issuance voided.

Western Kraft had expansion plans for its operation in Hancock County. The reservation of permissible increased levels of pollution is on a first-come, first-served method. Therefore, Western Kraft would not have any increment available to it in the event it wished to expand.

On September 20, 1979, Western Kraft filed its petition claiming that it was aggrieved by the Department's letter reserving the air increment to Kentucky Utilities. The Department's hearing officer entered his report on May 14, 1980, supporting the administrative reservation. Ultimately the Franklin Circuit Court affirmed the Department's position. This appeal followed.

This Court affirms the judgment of the circuit court.

The hearing officer properly concluded that the Department had authority to suspend an earlier determination concerning the air pollution application by the utility and had the authority to withdraw that suspension. The hearing officer correctly determined that the language of the letter of July 26, 1979, was only a temporary suspension of the air increment. The letter certainly invited correction and such was promptly supplied by the utility and the Energy Regulatory Commission. The Department withdrew the letter of suspension when it was convinced that it had been laboring under a mistake of law.

■ The Department had authority to correct or change its order by the action of August 22, 1979, because it retained jurisdiction over the subject matter before it. An administrative agency has the authority to reconsider and change its orders during the time it retains control over any question submitted to it. *Union Light, Heat & Power v. PSC*, Ky., 271 S.W.2d 361 (1954). Here the language of the July 26 order was tentative until further order of the agency.

The case of *Phelps v. Sallee*, Ky., 529 S.W.2d 361 (1975), is not persuasive. The statutes under which the Department is operating are far different from those of the banking commission in *Phelps, supra*. Moreover the banking commission's own laws have been changed since *Phelps*.

Here the Department is specifically authorized to reverse its own decisions by KRS 224.081(2). The statutes relating to applications for permits and preconstruction review indicate a continuing relationship over which the Department retains responsibility and jurisdiction. The Department must have power to reconsider its own decisions because a person outside the Department can force it to reconsider if he considers himself injured by an order of the Department. A formal adversary hearing to contest the order follows. Further appeal is provided to the courts under the statute. Here a decision of suspension was made on July 26. Less than 30 days later, that decision was rendered moot when it became clear that a mistake had been made and the original finding was confirmed. Because the Department acted within 30 days, as specified by KRS 224.081(2), it retained jurisdiction under *Union Light, Heat & Power, supra*, and *Phelps, supra*.

■ The hearing officer correctly determined that a certificate of convenience and necessity to provide a public service is not required under KRS 278.020(3), before the utility can seek preconstruction air-pollution approval to build a power plant.

First we must say that the Department properly deferred to the Energy Regulatory Commission's interpretation of KRS 278.-020. There is nothing in Chapter 224 that implies that the Department should or could construe and apply laws governing another agency. KRS 224.033(14) directs that the Department advise and consult and cooperate with other agencies of the Commonwealth. Here the Department properly yielded to the long-standing experience of the utility regulatory commission which has applied its own laws for many years.

KRS 278.020, which is now in essentially the same form as it was when enacted in

1934, is not ambiguous. Subsection 1 applies to certificates of public convenience and necessity for new utility construction. It does not prohibit a utility from applying first to other governmental agencies for other needed authority. Subsection 3 applies to certificates of convenience and necessity for franchises, licenses or other permits for utility service granted by a municipality or other governmental agency. This subsection prohibits a utility from applying to a city or other agency for authority to serve customers before going to the ERC for authority to construct.

There is clearly a distinction between a certificate for construction and a certificate authorizing service. They are two different subjects, requiring consideration of different standards and different findings and resulting in certificates for different purposes.

The Courts have upheld this type of legislative distinction. *See, Public Service Commission v. Bluegrass Natural Gas Co.,* 303 Ky. 310, 314–15, 197 S.W.2d 765, 767–68 (1946); *Kentucky Utilities Co. v. Public Service Commission,* Ky., 252 S.W.2d 885, 889 (1952).

The cases construing KRS 278.020 indicate a statutory distinction between § 1, as to construction, and § 3 as to service. The commission has broad discretion as to construction, and very limited authority as to service. None of these decisions suggest that utilities proposing construction are subject to § 3.

Here Western Kraft has seized on the word "permit" in § 3 and has argued it totally out of context. Commission regulations have, for many years, specified different performance for the two types of certificates. 807 KAR 50.005, § 8(1), which expressly covers applications for certificates under § 3, requests only limited information. The requirements are almost perfunctory compared to the extensive requirements for a construction permit which under 807 KAR 50.005 § 8(2)(d) requires among other things three maps of the concerned area. Obviously the utility must make surveys and other investigations before it can file with the ERC.

It is the holding of this Court that the Department had authority to reconsider its letter order of July 26, 1979, which suspended the air reservation. We further hold that the utility is not required to obtain a certificate of convenience and necessity pursuant to KRS 278.020(3) before it can make application to the Department for air increment review.

The trial court did not err in failing to find that Kentucky Utilities did not apply for a construction permit. The appellant's arguments are without merit.

The judgment of the circuit court is affirmed.

All concur.