Randy BOWERMAN, Appellant,

v.

BLACK EQUIPMENT COMPANY; Acuity Insurance; Hon. Marcel Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2008–CA–000828–WC.

Court of Appeals of Kentucky.

Oct. 2, 2009.

Rodger W. Lofton, Paducah, KY, for appellant.

K. Lance Lucas, Edgewood, KY, for appellee.

Before CAPERTON, KELLER, and NICKELL, Judges.

*OPINION*

NICKELL, Judge.

Randy Bowerman (Bowerman) appeals from the opinion of the Workers' Compensation Board (Board) affirming the opinion and award of Administrative Law Judge Marcel Smith (ALJ). Bowerman presents two arguments on appeal. First, he argues the ALJ improperly denied an award of temporary total disability (TTD) benefits when placing his claim in abeyance pending his reaching maximum medical improvement (MMI) in her November 14, 2005, interlocutory opinion, order, and award (interlocutory opinion). Second, he argues the ALJ, in her August 20, 2007, final opinion and award (final opinion), erroneously reversed her earlier interlocutory factual findings rendered when she placed his claim in abeyance. Conversely, Black Equipment Company (Black) argues the ALJ was not bound by her interlocutory findings and her final opinion was supported by substantial evidence. For the following reasons, we reverse.

## I. PROCEDURAL HISTORY

This claim did not follow the typical procedural path; and thus we provide the following procedural summary. Bowerman timely filed his claim for workers' compensation benefits on April 22, 2005. Pursuant to the scheduling order issued by the Office of Workers' Claims, the parties presented proof and attended a benefit review conference on September 7, 2005.

Following a hearing held on September 21, 2005, the ALJ rendered an interlocutory opinion on November 14, 2005. After thoroughly summarizing the conflicting evidence, the ALJ found Bowerman had not reached MMI but had achieved a level of improvement permitting his return to some form of work, ordered payment of medical benefits, and placed the claim in abeyance pending MMI and the assignment of any permanent impairment rating in accordance with the appropriate edition of the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (AMA *Guides*). Inexplicably, copies of the ALJ's interlocutory opinion were not forwarded to counsel. On March 16, 2006, the ALJ reissued her interlocutory opinion and directed that copies be sent to counsel, granting either party leave to file an appeal.

Bowerman sought reconsideration on March 24, 2006, but the ALJ denied his petition. Bowerman filed an appeal with the Board, and on June 7, 2006, the Board dismissed that appeal because it was "taken from an interlocutory order and not a final and appealable order."

Bowerman subsequently filed a motion to remove his claim from abeyance. On November 1, 2006, the ALJ ordered the claim removed from abeyance and scheduled additional proof time. On June 21, 2007, a second benefit review conference was held, immediately followed by a second formal hearing.

The ALJ issued her final opinion on August 20, 2007. Without explanation, and based on the same evidence considered prior to entry of her interlocutory opinion, the ALJ reversed her previous factual determinations by finding Bowerman had reached MMI and could return to all former work activities as of September 6, 2005. Based on her new findings, in

addition to permanent partial disability (PPD) benefits and medical benefits, the ALJ awarded TTD benefits from October 22, 2004, through October 24, 2004, and from April 27, 2005, through September 6, 2005.

On August 30, 2007, Bowerman filed a second petition for reconsideration, asserting the ALJ found Bowerman had not reached MMI and could engage in only some limited work activities at the time she entered her interlocutory opinion, and that the factual findings contained in her final opinion should be consistent with her previous determinations. The ALJ denied Bowerman's second petition for reconsideration on October 30, 2007, and Bowerman timely appealed to the Board. On March 28, 2008, the Board affirmed the ALJ's final opinion. This appeal followed.

## II. SUMMARY OF FACTS

### A. THE INTERLOCUTORY OPINION PHASE

Bowerman testified by deposition on June 21, 2005, and in person at the September 21, 2005, hearing. Prior to his employment as a mechanic for Black in 2004, Bowerman was employed in various laboring jobs, including work as a cook, a salesman and installer for a fence company, a welder and fabricator, a mechanic for Wal–Mart, and a mechanic for a heavy equipment company.

While working as a mechanic for Black on October 14, 2004, Bowerman suffered a work-related back injury as he repaired a forklift. Following the injury, Bowerman was able to return to some light work activities, and continued working at Black in this capacity until April 22, 2005, when he received medical advice to refrain from all work activities.

Bowerman was initially referred by Black to the physicians at Occunet, a local walk-in medical clinic. Black's workers' compensation carrier subsequently referred him to Dr. Richard A. Berkman (Dr. Berkman), a neurosurgeon. Bowerman filed copies of Dr. Berkman's medical records into evidence. Dr. Berkman first examined Bowerman on December 7, 2004. Based on an MRI scan, Dr. Berkman diagnosed a bulging disc at L5–S1, with moderate to severe degeneration, and a sizable disc rupture at L4–5, with moderate disc degeneration. Dr. Berkman prescribed physical therapy and an epidural steroid block, but ultimately recommended surgery. During the course of treatment, Dr. Berkman maintained Bowerman on restricted work duty.

On March 8, 2005, Dr. Berkman opined Bowerman had reached MMI from a nonsurgical standpoint, and imposed permanent physical restrictions of no bending or lifting over thirty pounds, occasional bending or lifting of up to thirty pounds, frequent lifting of up to fifteen pounds, and bending up to thirty degrees at the waist. Dr. Berkman acknowledged as reasonable Bowerman's plan to seek a second opinion regarding surgery from Dr. Theodore E.C. Davies (Dr. Davies), a neurosurgeon.

Dr. Davies testified by deposition on June 27, 2005, and Bowerman filed copies of his medical records into evidence. Dr. Davies first examined Bowerman on April 22, 2005. He reviewed Bowerman's MRI scan and concurred with Dr. Berkman's diagnosis. Dr. Davies noted the two-week course of physical therapy prescribed by Dr. Berkman had resulted in some improvement, but the epidural steroid injection had failed to provide any relief. Because Bowerman desired to avoid surgery, Dr. Davies recommended additional physical therapy in the hope Bowerman might obtain additional improvement. If such conservative measures failed, however,

surgical intervention at L4–5 would be considered.

Black's workers' compensation carrier subsequently paid for only part of the physical therapy prescribed by Dr. Davies. Even so, improvement was noted and Dr. Davies was hopeful Bowerman might return to work upon completion of the conservative medical treatment. Bowerman had remained on off-work status since his initial office visit with Dr. Davies on April 22, 2005, and was not expected to reach MMI until the full benefit of physical therapy was realized.

Once Bowerman reached MMI, Dr. Davies opined he would qualify, with or without surgery, for a permanent impairment rating of ten to thirteen percent under the AMA Guides. In the meantime, Dr. Davies was agreeable to Bowerman engaging in light work duty, such as answering a telephone, so long as he was allowed to rest and change positions at will, including, sitting, walking, standing and lying down.

Black referred Bowerman to Dr. Thomas J. O'Brien (Dr. O'Brien), an orthopaedic surgeon, for an independent medical evaluation to be performed on September 6, 2005. A copy of his report was filed into evidence. Based on his review of the MRI scan, which demonstrated a decreased disc signal at L4–5, and to a lesser degree at L5–S1, Dr. O'Brien diagnosed an L4–5 degenerative disc bulge, rather than a disc herniation, which he opined was aggravated and became symptomatic following the work-related back injury on October 14, 2004. Dr. O'Brien opined Bowerman required "no further formal treatment," including surgery, physical therapy, steroid injection therapy, or other conservative modalities. Instead, Dr. O'Brien recommended Bowerman simply perform a "self-directed back exercise regimen."

Dr. O'Brien stated Bowerman "does not require any permanent lifting restrictions,"

and "it is safe for him to pursue all activities." Finally, Dr. O'Brien opined Bowerman's condition qualified for a five percent permanent impairment rating under the AMA Guides.

At the hearing on September 21, 2005, the ALJ identified three contested issues, including extent and duration of any disability, entitlement to any additional period of TTD benefits, and the necessity of further physical therapy. The ALJ noted Black had paid two days of TTD benefits.

Bowerman provided additional testimony indicating Black's workers' compensation carrier had recently authorized additional physical therapy, and that he had appointments scheduled with the physical therapist and Dr. Davies. Bowerman stated physical therapy had provided some improvement, but that Dr. Davies had not yet released him to return to work. He reported the light work activities he had engaged in for Black following his work-related injury had aggravated his back condition, and Dr. Davies had taken him off all work activities to expedite the healing process.

At the conclusion of the hearing, the ALJ allowed an additional period for submission of rebuttal evidence. On October 11, 2005, Bowerman filed a copy of an undated termination letter he had recently received from Black. The letter indicated his employment had been terminated because Black "had given you the opportunity to return back to work doing light duty within your restrictions and you have chosen not to accept this opportunity," and "since you have refused the light duty work that we have available."

The parties thereafter filed their respective briefs, and the ALJ issued her interlocutory opinion. After providing a detailed summary of the conflicting evidence, particularly the conflicting medical opin-

ions of Drs. Berkman, Davies, and O'Brien, the ALJ found:

> [t]aking plaintiff's post-injury physical, emotional, intellectual and vocation (sic) status to the extent the evidence (sic) and considering how these factors interact, I find plaintiff is able to earn an income by providing services on a regular and sustained basis in a competitive economy, I find that plaintiff is able to find work consistently under normal employment conditions. He is not totally disabled. *McNutt Construction[/First General Services] v. Scott*, 40 S.W.3d 854 ( [Ky.]2001).

More specifically, the ALJ made the following factual findings:

> I am persuaded by Dr. Davies that plaintiff has not reached maximum medical improvement. However, I find as stated above, that he reached a level of improvement that permitted his return to some form of work on October 25, 2004.

> I am persuaded by Dr. Davies that an impairment rating must wait until plaintiff reaches maximum medical improvement. I am persuaded that additional physical therapy is reasonable and necessary. Therefore, it is appropriate to place this case in abeyance and award the additional physical therapy, (although no TTD).

As previously noted, for reasons unclear from the record, neither Bowerman nor Black received a copy of the interlocutory opinion. After the ALJ reissued her interlocutory opinion, Bowerman filed a timely petition for reconsideration raising two arguments. First, he argued the ALJ had used the incorrect statutory standard and legal authority for determining his entitlement to additional TTD benefits. Second, he argued application of the correct statutory standard and legal authority compelled an award of additional TTD benefits. In support, Bowerman noted the ALJ had abated his claim after adopting the medical opinions of Dr. Davies and specifically finding Bowerman had not reached MMI, remained off work pursuant to medical advice, and required further medical treatment.

The ALJ's May 3, 2006, order denying Bowerman's petition for reconsideration reiterated her original factual findings stating:

> this Administrative Law Judge is not persuaded by plaintiff's argument that 803 KAR[1] 25:010 § 12(5) prohibits placing a claim in abeyance without awarding temporary total disability benefits. Having found that plaintiff has not reached maximum medical improvement, this Administrative Law Judge also found that plaintiff is presently able to work. Plaintiff's condition does not meet the definition of temporary total disability found in KRS[2] 342.0011(11)(a). Although plaintiff has not reached maximum medical improvement, I found and still find that plaintiff has reached a level of improvement that would permit a return to employment. Therefore, plaintiff is not entitled to temporary total disability benefits.

In determining Bowerman was "presently able to work" and could "return to employment," the ALJ did not specify whether she was referring to his customary work activities performed at the time of his work-related injury or merely to some limited light work duties such as those he briefly performed for Black following the work-related injury but prior to his medical treatment by Dr. Davies.

---

1. Kentucky Administrative Regulations (footnote added).

2. Kentucky Revised Statutes (footnote added).

Bowerman appealed the interlocutory opinion to the Board. However, because the ALJ's interlocutory opinion was not a final and appealable order, the Board dismissed Bowerman's appeal on June 7, 2006.

## B. THE FINAL OPINION PHASE

The final opinion phase of this claim began when Bowerman filed a motion to remove his claim from abeyance on October 2, 2006. The ALJ granted the motion on November 1, 2006, and established a schedule for submission of proof.

Both Bowerman *and* Black chose to file only updated medical records from Dr. Davies, presumably because he was the treating neurosurgeon whose medical opinions the ALJ had found most persuasive. These updated medical records did not contradict the medical opinions previously expressed by Dr. Davies, indicating Bowerman had not reached MMI and had remained on off-work status since the original hearing on September 21, 2005. Significantly, no additional proof was submitted regarding Bowerman's condition prior to entry of the ALJ's interlocutory opinion.

Black submitted three updated medical records. In a May 8, 2006, letter to Black's workers' compensation carrier, Dr. Davies stated Bowerman could be considered at MMI as of his examination on November 16, 2005. Even so, Dr. Davies opined Bowerman "would need to work at the limitations" and might require periodic "physical therapy or other evaluation and treatment if he becomes more symptomatic."

When Bowerman returned on June 5, 2006, Dr. Davies noted a reduction in Bowerman's low back pain. Based on examination, Dr. Davies recommended continued home exercises and prescribed more pain medication.

Finally, on December 8, 2006, Bowerman returned to Dr. Davies for a follow-up office examination. Dr. Davies noted Bowerman "has been doing well since I have last seen him," but that he "has been off work" and "is unable to get a job with any kind of restrictions placed upon him." Concluding Bowerman did not require surgery, Dr. Davies proceeded to release him "for regular duty to be seen as necessary."

Bowerman filed two updated medical records. In an examination record dated October 5, 2005, Dr. Davies noted Bowerman had continued to improve with physical therapy. He prescribed additional physical therapy and referred Bowerman for vocational evaluation and retraining.

Finally, when Bowerman returned on November 16, 2005, Dr. Davies noted he no longer worked at Black and was pursuing a GED. Based on examination, Dr. Davies opined Bowerman was "capable of some work duty," but "should start at light duty." Specifically, Dr. Davies stated Bowerman "may resume work activities if it (sic) is available for him," but restricted any lifting to twenty pounds or less.

On June 21, 2007, a second benefit review conference was held, followed immediately by a second formal hearing. Bowerman testified Dr. Davies had not advised him to return to work following the November 16, 2005, office visit. In May of 2006, Dr. Davies had agreed he could seek light work but Bowerman was unable to find employment. Bowerman testified Dr. Davies released him on December 8, 2006, to return to regular work duty with no restrictions. Since that time, Bowerman had worked for a short time in March and April of 2007 as a mechanic and was continuing to interview for other jobs. At the conclusion of the hearing, the ALJ confirmed the contested issues consisted of the extent and duration of any disability

and Bowerman's entitlement to TTD benefits.

After briefing by the parties, the ALJ rendered her final opinion on August 20, 2007. In her opening paragraph, the ALJ referenced her November 14, 2005, interlocutory opinion, indicating that her findings and rulings were "incorporated herein as if restated at length." The ALJ proceeded to summarize the evidence submitted after she had removed Bowerman's claim from abeyance.

The ALJ then rendered additional findings of fact and conclusions of law. In addressing the issue of TTD benefits, the ALJ summarized all relevant proof, noting:

[t]hese benefits were paid at the rate of $413.33 per week from October 22, 2004[,] through October 24, 2004. Plaintiff returned to work for defendant on October 25, 2004[,] through April 26, 2005. Dr. Berkman placed plaintiff at maximum medical improvement on March 8, 2005. Dr. O'Brien saw plaintiff on September 6, 2005[,] and assessed an impairment rating. Dr. Davies placed plaintiff at maximum medical improvement and released him to return to work without restrictions in December of 2006.

Absent any new evidence concerning Bowerman's condition prior to entry of her interlocutory opinion, the ALJ abandoned her factual findings rendered twenty-one months earlier, stating instead:

[c]onsidering the evidence in its entirety, I am persuaded by Dr. O'Brien with regard to this issue and find that plaintiff had reached maximum medical improvement to the point that an impairment rating could be assessed. I find that plaintiff is entitled to additional temporary total disability benefits from April 27, 2005[,] through September 6, 2005.

Clearly these new factual findings in the ALJ's final opinion contradicted those rendered in her interlocutory opinion. These new factual findings also created an internal inconsistency, because the ALJ had incorporated and adopted her former findings by reference in her final opinion.

Bowerman filed a second petition for reconsideration on August 31, 2007, asserting the ALJ should have awarded him TTD benefits from the date Dr. Davies took him off work (April 22, 2005) until the date Dr. Davies pronounced him at MMI (December 8, 2006). In support of his contention, Bowerman argued the ALJ's final award should have been consistent with her previous factual findings regarding his not having attained MMI and his inability to return to regular work activities. The ALJ summarily denied Bowerman's second petition for reconsideration on October 30, 2007.

Bowerman filed a timely appeal with the Board, which affirmed the ALJ in an opinion rendered on March 28, 2008. In pertinent part, the Board stated:

[i]t is equally clear in her subsequent opinion addressing the remaining issues, the ALJ made a contradictory finding. In her original opinion dated November 14, 2005[,] citing Dr. Davies' report, the ALJ found Bowerman had not reached maximum medical improvement. However, in an opinion and award dated August 20, 2007, relying on Dr. O'Brien's medical report, the ALJ found that Bowerman had indeed reached maximum medical improvement on September 6, 2005. The ALJ, however, was not bound by the interlocutory decision she had made earlier when she finally decided the merits of the claim and was free to reverse or modify her earlier findings.

The Board further held there was substantial evidence in the record "to support the

ALJ's findings contained in her August 20, 2007, opinion and award."

### III. STANDARD OF REVIEW

■ Appellate review of any workers' compensation decision is limited to correction of the ALJ when the ALJ has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice. *Western Baptist Hosp. v. Kelly,* 827 S.W.2d 685, 687–88 (Ky.1992). Our standard of review differs in regard to appeals of an ALJ's decision concerning a question of law or a mixed question of law and fact *vis-à-vis* an ALJ's decision regarding a question of fact.

■ The first instance concerns questions of law or mixed questions of law and fact. As a reviewing court, we are bound neither by an ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. In either case, our standard of review is *de novo. Carroll v. Meredith,* 59 S.W.3d 484, 489 (Ky.App.2001); *Cinelli v. Ward,* 997 S.W.2d 474, 476 (Ky.App.1998). *De novo* review allows appellate courts greater latitude in reviewing an ALJ's decision. *Purchase Transportation Services v. Estate of Wilson,* 39 S.W.3d 816, 817–18 (Ky.2001); *Uninsured Employers' Fund v. Garland,* 805 S.W.2d 116, 117 (Ky.1991).

■ The second instance concerns questions of fact. KRS 342.285 designates the ALJ as finder of fact, and has been construed to mean that the factfinder has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418, 419 (Ky.1985); *McCloud v. Beth–Elkhorn Corporation,* 514 S.W.2d 46, 47 (Ky.1974). Moreover, an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Caudill v. Maloney's Discount Stores,* 560 S.W.2d 15, 16 (Ky.1977).

■ KRS 342.285 also establishes a "clearly erroneous" standard of review for appeals concerning factual findings rendered by an ALJ, and is determined based on reasonableness. *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky.1986). Although an ALJ must recite sufficient facts to permit meaningful appellate review, KRS 342.285 provides that an ALJ's decision is "conclusive and binding as to all questions of fact," and that the Board "shall not substitute its judgment for that of the [ALJ] as to the weight of evidence on questions of fact[.]" *Shields v. Pittsburgh & Midway Coal Mining Co.,* 634 S.W.2d 440, 441 (Ky.App.1982). In short, appellate courts may not second-guess or disturb discretionary decisions of an ALJ unless those decisions amount to an abuse of discretion. *Medley v. Board of Education, Shelby County,* 168 S.W.3d 398, 406 (Ky.App.2004). Discretion is abused only when an ALJ's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Downing v. Downing,* 45 S.W.3d 449, 454 (Ky.App.2001).

### IV. LEGAL ANALYSIS

With the foregoing standards in mind, we will address the two issues presented in Bowerman's appeal. First and foremost, we must determine whether the ALJ's discretion as finder of fact extended to rendering a final opinion in which she completely abandoned and reversed dispositive factual findings initially determined by her in the interlocutory opinion which favored Bowerman and were supported by sub-

stantial evidence,[3] absent a showing of new evidence, fraud, or mistake. Second, we must determine whether the ALJ erred in denying additional TTD benefits when, as initially determined in the interlocutory opinion, Bowerman was found not to have reached MMI and his claim was abated pending completion of medical treatment recommended by his treating physician, reaching MMI, and assignment of an impairment rating. We hold that Bowerman's two arguments mandate reversal of the Board's affirmation of the ALJ's interlocutory and final opinions.

## A. THE ALJ WAS WITHOUT AUTHORITY TO REVERSE PRIOR FACTUAL FINDINGS REGARDING THE MERITS OF BOWERMAN'S CLAIM

■ The primary issue before us is whether an ALJ, as finder of fact, may reverse a dispositive interlocutory factual finding on the merits in a subsequent final opinion, absent a showing of new evidence, fraud, or mistake. Though this appears to be a matter of first impression, our review of relevant legal authority leads us to conclude the reversal of prior dispositive factual findings rendered by an ALJ in an interlocutory opinion, absent introduction of new evidence, fraud, or mistake, is arbitrary, unreasonable, unfair, and unsupported by sound legal principles. In such instances, the ALJ exceeds the exercise of reasonable discretion, operates outside the bounds of statutory authority, and must be reversed. In affirming the ALJ's final opinion, we believe the Board misinterpreted its own cited legal authority and overlooked legal authority drawn from analogous circumstances involving petitions for reconsideration and motions for reopening.

## 1. THE ALJ'S REVERSAL OF INTERLOCUTORY FACTUAL FINDINGS REGARDING THE MERITS OF BOWERMAN'S CLAIM WAS AN ABUSE OF DISCRETION WHICH COMPELS REVERSAL

■ The question presented on appeal is whether the ALJ's reversal of her initial factual findings in her final opinion was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Downing*. If so, the ALJ abused her discretion and reversal is mandated. *Medley*.

■ Generally, "arbitrariness" arises when an ALJ renders a decision on less than substantial evidence, fails to afford procedural due process to an affected party, or exceeds her statutory authority. *K & P Grocery, Inc. v. Commonwealth, Cabinet for Health Services*, 103 S.W.3d 701, 703 (Ky.App.2002). Arbitrariness is one of five reasons identified in KRS 342.285(2) authorizing reversal of an ALJ's decision.[4]

---

**3.** Substantial evidence has been defined as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people. *Smyzer v. B.F. Goodrich Chemical Company*, 474 S.W.2d 367, 369 (Ky.1971).

**4.** The five instances identified in KRS 342.285(2) are:
 (a) *The administrative law judge acted without or in excess of his powers;*
 (b) The order, decision, or award was procured by fraud;

(c) The order, decision, or award is not in conformity to the provisions of this chapter;
(d) The order, decision, or award is clearly erroneous on the basis of the reliable, probative, and material evidence contained in the whole record; or
(e) *The order, decision, or award is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.*
(emphasis added).

As used in the statute, an arbitrary decision is synonymous with one that is "capricious" or "characterized by abuse of discretion or clearly unwarranted exercise of discretion." A capricious decision is defined as one "contrary to the evidence or established rules of law[,]" or arbitrary, while a capricious fact-finder would be defined as being "characterized by or guided by unpredictable or impulsive behavior." [5] These terms are also synonymous with an "unreasonable" decision, which is defined as one "[n]ot guided by reason; irrational or capricious." [6]

Based on KRS 342.285(2) and the foregoing definitions of terms contained therein, we hold the ALJ's unexplained turnabout regarding her initial factual findings to be arbitrary, capricious, and so unreasonable as to be erroneous as a matter of law. *Ira A. Watson Dept. Store v. Hamilton*, 34 S.W.3d 48, 52 (Ky.2000). Thus, the ALJ's reversal of previously adjudicated factual findings represents an abuse of her discretion as fact-finder, and because she thereby acted in excess of her statutory authority, reversal is mandated.

It is of no consequence that the Board held Dr. O'Brien's medical opinions to be substantial evidence supporting the opposite factual findings rendered in the ALJ's final opinion since she essentially performed an unauthorized "second review" of the questions of fact underpinning Bowerman's claim for TTD benefits rather than merely substituting and applying the correct statutory definition of TTD to the underlying facts as already adjudicated. *Peabody Coal Co. v. Guthrie*, 351 S.W.2d 168, 170 (Ky.1961) (citing *Black Mountain Corporation v. Gilbert*, 296 Ky. 514, 177 S.W.2d 894, 895 (1944) (overruled on other grounds by *E. & L. Transport Co. v. Hayes*, 341 S.W.2d 240 (Ky.1960))) (hold-

ing trier had jurisdiction to correct award where claimant had been declared totally disabled but benefits had been awarded for wrong statutory period, and by doing so, trier had not engaged in unauthorized second review of case). We hold the ALJ's unauthorized second review of the merits of a claim for compensation benefits is an egregious error constituting manifest injustice. *Durham v. Copley*, 818 S.W.2d 610, 612 (Ky.1991). Legal consequences streaming from an ALJ's factual determinations must not be left to ebb and flow according to the changing current of the ALJ's mere whim as fact-finder. Thus, absent newly discovered evidence, fraud, or mistake, parties have a reasonable expectation that they may rely on factual findings that have been fully and fairly adjudicated by an ALJ, even when rendered in an interlocutory decision. *See Garrett Mining Co. v. Nye*, 122 S.W.3d 513, 522 (Ky.2003).

## 2. IN AFFIRMING THE ALJ'S FINAL OPINION THE BOARD MISCONSTRUED LEGAL AUTHORITY

In its decision of March 28, 2008, the Board affirmed the ALJ's reversal, offering the following blanket legal analysis:

> [t]he ALJ, however, was not bound by the interlocutory decision she had made earlier when she finally decided the merits of the claim and was free to reverse or modify her earlier decision. See *Union Light, Heat and Power Company v. Public Service Commission*, 271 S.W.2d 361 (Ky.1954) and *Western [K]raft Paper Group v. Dept. for Natural Resources [and] Environmental Protection*, 632 S.W.2d 454 (Ky.App.1982). See also *Vendome Copper Brass Works, Inc. v. Schehr*, 2006–SC–000831–WC,

---

**5.** Black's Law Dictionary 224 (8th ed. 2004).

**6.** Black's Law Dictionary 1574 (8th ed. 2004).

2007 WL 2743286 (rendered September 20, 2007, and designated not-to-be-published).[7]

Our reading of the cited cases leads us to conclude the Board misconstrued its own legal authority. Analysis of these cases reveals an important legal distinction between an ALJ's authority to reverse prior determinations relating to dispositive *findings of fact* concerning the merits of a claim *vis-à-vis* prior determinations relating to *application of law* to those factual findings. This distinction supports reversal, rather than affirmation, of the ALJ's final opinion.

First, in *Union Light,* a utility moved to set aside and vacate an order of the Public Service Commission (PSC) which had reversed its earlier order allowing a rate increase. Concluding the PSC's prior order had "traveled the wrong route" because the original decision was based "upon [the] violation of a rule which was in fact invalid," the Court held the PSC's subsequent order setting aside the prior order was proper. The Court reasoned:

> [f]urthermore, we know of no rule of law that denies to a court the right to revoke an order and substitute in lieu thereof a new and different one, provided that court has not lost jurisdiction over the case involved. An administrative agency unquestionably has the authority, just as has a court, to reconsider and change its orders during the time it retains control over any question under submission to it. It has been held that an administrative agency has the power to amend or correct its records by *nunc pro tunc* entries. 42 Am.Jur., Public Administrative Law, Section [75], page 391.

*Union Light* 271 S.W.2d at 365–366. Of consequence, however, is the fact that the court in *Union Light* approved the PSC's reversal of its original incorrect application of an invalid statutory *rule,* and not a reversal of any original factual findings regarding the merits.

Second, citing the holding in *Union Light,* this Court likewise held in *Western Kraft* that the Department for Natural Resources and Environmental Protection properly reconsidered and changed a prior order after determining the agency had incorrectly interpreted and applied the relevant *statutory provision.* Again, however, reversal of the prior administrative order did not change any previous factual findings regarding the merits.

Third and finally, in the unreported case of *Vendome,* the Supreme Court of Kentucky affirmed an ALJ's award of compensation benefits in a final opinion containing a factual finding that the claimant's back injury had resulted in a thirteen percent permanent impairment rating under the AMA *Guides.* The ALJ's finding in the final opinion was based on the medical opinion of the claimant's treating physician. However, in an interlocutory opinion, the ALJ had denied surgical treatment recommended by the claimant's treating physician as being neither reasonable nor necessary.

*Vendome* is similar to the present case in that it involved an ALJ's discretion to choose between conflicting medical evidence pertaining to factual issues which were addressed in an interlocutory opinion *vis-à-vis* a final opinion. Any similarities end at that point. In *Vendome,* the ALJ considered one issue (reasonableness and necessity of recommended medical treatment) in the interlocutory opinion, and re-

---

**7.** Citation to an unpublished opinion is forbidden by CR 76.28(4). Although *Vendome* is unpublished, the Board apparently cited it

due to the absence of applicable published case law. CR 76.28(4)(c). (Footnote added.)

jected the medical opinion of the treating physician regarding that question of fact. Later, in the final opinion, the ALJ addressed a second issue (diagnosis and permanent impairment), and adopted the medical opinions of the treating physician concerning those questions of fact.

The questions of fact addressed in the interlocutory opinion and the final opinion were entirely distinct, the ALJ's final opinion did not reverse factual findings made previously in the interlocutory opinion, and the interlocutory and final opinions were consistent. In underscoring the importance of consistency regarding factual findings the Supreme Court held:

> [i]n any event, *there was no inconsistency* between the interlocutory and final decisions. The diagnosis and treatment of a medical condition are *different matters*. A physician may diagnose a condition properly yet prescribe an unreasonable or unnecessary method for treating it. Thus, an ALJ's reservations concerning the wisdom of a treatment that a physician proposes do not necessarily imply reservations concerning the physician's diagnosis.

*Vendome,* 2007 WL 2743286 at *3 (emphasis added).

We conclude *Vendome* simply recognized the well-established principle that an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof. *Caudill,* 560 S.W.2d at 16. Thus, the ALJ had authority to reject medical opinions of the treating physician concerning one factual question addressed in an interlocutory opinion while adopting the physician's opinions regarding a separate factual question addressed in a final opinion.

Though *Vendome* followed the principle announced in *Union Light* that an ALJ is free to reverse or modify an earlier decision so long as she retains jurisdiction, our reading of *Vendome* convinces us the Supreme Court nevertheless ruled that an ALJ's adjudicated factual findings must remain consistent in subsequent decisions. This is particularly true where, as in Bowerman's appeal, the conflicting evidence concerning a particular question of fact has remained unchanged, the parties had fully presented their respective arguments, and the ALJ's original factual findings were supported by substantial evidence.

In the present case, the ALJ initially assigned greater weight to the medical opinions of Dr. Davies and found Bowerman: had *not* reached MMI as of the November 14, 2005, hearing when the ALJ entered her interlocutory opinion; did not yet qualify for assignment of a permanent impairment rating; and could perform only *"some"* work activities as of October 25, 2004. Later, in her final opinion, based on the *same evidence,* the ALJ revisited the *same factual questions* and reversed her original determinations. She now assigned greater weight to the medical opinions of Dr. O'Brien and found Bowerman: had reached MMI as of September 6, 2005, qualified for an AMA impairment rating, and could pursue *all* work activities. Unlike *Vendome,* the ALJ in Bowerman's claim rendered a final opinion with factual findings inconsistent with those previously adjudicated in her interlocutory opinion regarding the same factual questions and based on the same evidence. To do so was arbitrary, unreasonable, unfair, and unsupported by sound legal principles, and was an abuse of the ALJ's discretion.

Based on the foregoing legal analysis, we hold the Board misconstrued the legal authority cited in its affirmance of the ALJ's final opinion. Instead, a correct

construction of the foregoing cases supports reversal and remand.

## 3. ANALOGOUS LEGAL AUTHORITY SUPPORTS PROSCRIPTION OF AN ALJ FROM REVERSING HER PRIOR DISPOSITIVE FACTUAL FINDINGS

While an ALJ's discretion as fact-finder is expansive, it is not limitless.[8] Reason, logic, and sound principles of justice dictate that findings regarding questions of fact, once fully litigated by the parties and properly adjudicated by the fact-finder, should not be subject to change absent new evidence, fraud, or mistake, regardless of whether rendered in an interlocutory order or a final decision. *See Garrett Mining*, 122 S.W.3d at 522.

Our holding is supported by a line of legal authority pertaining to limitations imposed upon an ALJ's analogous discretion to reverse prior factual findings arising when presented with petitions for reconsideration and motions for reopening. The import of this analogous legal authority further convinces us that the ALJ in the present appeal exceeded her discretionary authority to reverse her prior factual findings regarding the merits of Bowerman's claim, even though she retained jurisdiction over the case.

*Kentucky Wagon Mfg. Co. v. Esters*, 221 Ky. 63, 297 S.W. 811 (1927), affirmed the fact-finder's refusal to reopen an employee's claim for compensation where: the claimant had not introduced requisite medical evidence in the original action to prove his injury was work-related; the fact-finder had rendered prior factual findings regarding the merits of his claim in its original order based on the submitted evidence;

and, based on those prior factual findings, the fact-finder had dismissed the claimant's application for benefits. The Court held, "[i]t is ... essential that there should be an end to litigation in cases arising under the Workmen's Compensation Act as in other cases." *Id.* at 812. To hold otherwise, the Court reasoned, "would be to entirely destroy the value and effect of the awards of the [fact-finder]." *Id.* at 813. Parties have a reasonable expectation that dispositive questions of fact, once fairly litigated, fully argued, and properly adjudicated, may be considered finally resolved, and thereby provide a sure foundation for their further argument or action, regardless of whether the factfinder's determination is rendered in an interlocutory order or a final decision. Otherwise, the value and effect of factual findings, including those rendered in interlocutory proceedings, is eviscerated.

*Black Mountain* affirmed the fact-finder's change of an earlier order because it did not constitute an unauthorized second review of the claimant's case. The Court reasoned the fact-finder's change simply corrected an "apparent clerical error" in applying the wrong statutory period allowed for total disability.

Likewise, in *Peabody Coal*, the Court affirmed the fact-finder's change of an earlier order in which the claimant had been awarded an incorrect amount of benefits based on application of the wrong version of the relevant statute. The Court held the claimant was "entitled to compensation as provided by [the] law in effect at the time his disability occurred...." *Id.* at 170. The Court reiterated the reasoning of *Black Mountain*, holding that the fact-finder's subsequent order changing the

---

8. For example, the Supreme Court of Kentucky held in *Ira A. Watson*, 34 S.W.3d at 51, that an ALJ has "very limited discretion" when determining the extent of a worker's permanent, partial disability, even though the ALJ must weigh the evidence concerning whether the worker is able to engage in work activities and earn an income.

claimant's compensable period "did not constitute a second review of the case but merely substituted language in accordance with the law as it then existed." *Id.*

In *Fayette County Board of Education v. Phillips,* 439 S.W.2d 319 (Ky.1969), a claimant appealed the fact-finder's denial of her motion to reopen its previous award for an adjustment of the amount of her weekly total permanent disability ("TPD") benefits. The Court affirmed the circuit court's reversal of the fact-finder's denial of the claimant's motion based on its conclusion that a "mistake" within the meaning of KRS 342.125 existed and it was an abuse of discretion not to amend the award to conform to the admitted facts under the circumstances presented. The Court noted that KRS 342.125 sets forth definite limitations regarding a fact-finder's authority to change an award, and concluded, "[i]t is true, of course, that awards may not be modified capriciously or whimsically." *Id.* at 321.

In *Beth–Elkhorn Corp. v. Nash,* 470 S.W.2d 329 (Ky.1971), the former Court of Appeals reversed a circuit court's affirmation of the fact-finder's reconsideration and reversal of the merits of a workers' compensation claim. In its original decision, the fact-finder made a factual finding that the claimant's "current condition" had not caused his loss of earnings, and dismissed the claim. As the Court noted, "[t]his, of course, was a decision on the merits of the claim." *Id.* at 330. However, when the claimant filed a petition for reconsideration, the factfinder reversed itself in regard to the entire case, withdrew its original order, and awarded the claimant benefits. Citing the restrictive provisions of KRS 342.281 pertaining to petitions for reconsideration, the Court noted the fact-finder was

limited in such review to the correction of errors patently appearing upon the face of the award, order, or decision
. . . .

This statutory limitation is clear and positive. It expresses *a legislative policy that the Board shall not have authority to reverse itself on the merits of a claim.* Whether this policy is a good one or a bad one, it is not our province to determine. Its apparent justification is that if parties adversely affected by an award could ask for reconsideration of the whole case, a *final determination could be unduly delayed.*

*Id.* (emphasis added).

In *Wells v. Beth–Elkhorn Coal Corp.,* 708 S.W.2d 104 (Ky.App.1985), the fact-finder granted an employer's petition for reconsideration and reversed its prior decision because its previous apportionment of liability between the employer and the Special Fund was legally incorrect. On appeal, the circuit court reversed and remanded, holding the fact-finder was without authority to grant the petition. However, this Court held KRS 342.281 authorized the fact-finder to summarily correct itself, reasoning that the statutory provision concerning petitions for reconsideration "is to be liberally construed and is not intended merely to address clerical errors but all patent errors." *Id.* at 106. Even so, citing *Nash,* our Court underscored a noteworthy caveat, holding that the fact-finder's authority to grant such a petition for reconsideration was limited in one respect, stating "[t]he petition may not be granted if it appears that the Board has *reconsidered the case on its merits* and/or *changed its factual findings.*" *Id.* (emphasis added).

Finally, in *Garrett Mining,* an ALJ granted a claimant's motion to reopen a prior workers' compensation decision and ultimately awarded increased disability

benefits. However, upon the filing of a petition for reconsideration, the ALJ changed a factual finding pertaining to apportionment of liability between the employer and the Special Fund. On appeal, our Supreme Court held that, while the ALJ had authority to increase a claimant's original award in accordance with any increased disability, the ALJ had no authority to change an original factual finding concerning apportionment of causation. Specifically, in regard to motions to reopen, the Court held:

> [h]owever, once an ALJ-adjudicated award and order becomes final, the ALJ's determinations with respect to, *e.g.,* causation, notice, apportionment, etc., cannot be readdressed under KRS 342.125 *except upon an allegation of fraud, newly discovered evidence, or mistake,* grounds that do not exist and are not asserted in this case. The reason, of course, is that *revisiting issues previously decided is precluded by the principle of res judicata.* "The doctrine of res judicata applies to the rulings of a Workmen's Compensation Board the same as it does to the decisions of a court." *Hysteam Coal Corp. v. Ingram,* 283 Ky. 411, 141 S.W.2d 570, 572 (1940).

*Id.,* 122 S.W.3d at 522 (citations omitted) (emphasis added). The Court held that once a decision is final, an ALJ is without authority to make new findings, apply a new theory, and increase the amount of benefits awarded. *Id.* at 523.

In the instant appeal, the ALJ appropriately exercised her discretion to enter factual findings in the interlocutory proceeding, but then erred when she applied the wrong statutory standard to those facts. When her error became evident, the ALJ did not merely correct her misapplication of the law, but abused her discretion by conducting an unauthorized second review of Bowerman's claim and reversing her original factual findings. As a result, Bowerman's assertion that the ALJ's action bears the appearance of being result-oriented is understandable.

The unexplained reversal of the ALJ's longstanding interlocutory factual findings was inconsistent, erratic and unpredictable, and therefore arbitrary and capricious. The ALJ's entry of opposite dispositive factual findings in her final opinion went beyond merely correcting an error patently appearing upon the face of her interlocutory opinion. Instead, the ALJ's action represented an unauthorized second review of the merits of Bowerman's claim, and was an abuse of her discretion as fact-finder.

While the Court's reference to the principle of *res judicata* in *Garrett Mining* applied to dispositive factual findings rendered in final decisions *vis-à-vis* motions to reopen, its logic extends to factual determinations which have been fully and fairly litigated and properly adjudicated by an administrative fact-finder in interlocutory orders. Factual findings have legal consequences. They are a foundation for the proper application of law. Parties rely upon adjudicated factual findings in shaping their decisions, conduct, and arguments. Adjudicated factual findings must remain constant and immutable so their legal impact may be predictable. A fact, once adjudged, must be taken for truth; and no fact, once adjudged, should be subject to re-examination or revision.

This principle of finality is logically applicable to all factual findings, whether rendered in interlocutory orders or final decisions, and certainly applies to the circumstances in Bowerman's appeal. The clear import of the foregoing analogous legal authority is that an ALJ, properly acting within her discretion as fact-finder, is authorized to reverse a misapplication of law in a subsequent decision, but is *not*

authorized to conduct a second review of the merits in a subsequent opinion by reversing previously litigated and adjudicated questions of fact.

## B. THE ALJ ERRED IN DENYING AN AWARD OF TTD BENEFITS BASED ON FACTUAL FINDINGS RENDERED IN AN INTERLOCUTORY OPINION

■ Entitlement of a workers' compensation claimant to TTD benefits is a question of fact to be determined in accordance with KRS 342.0011(11)(a). Statutory interpretation is a matter of law reserved for the courts, and courts are not bound by the ALJ's or the Board's interpretation of a statute. *Halls Hardwood Floor Co. v. Stapleton*, 16 S.W.3d 327, 329–330 (Ky. App.2000). Indeed, it is the appellate court's province to ensure that ALJ decisions, and the Board's review thereof, are in conformity with the Workers' Compensation Act. KRS 342.290; *Whittaker v. Reeder*, 30 S.W.3d 138, 144 (Ky.2000).

TTD is statutorily defined in KRS 342.0011(11)(a) as "the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment[.]" In *Central Kentucky Steel v. Wise*, 19 S.W.3d 657 (Ky.2000), the Supreme Court of Kentucky established how the statutory definition was to be interpreted and applied in determining the duration of any appropriate award of TTD benefits. In *Wise*, the employer argued KRS 342.0011(11)(a) required termination of TTD benefits as soon as an injured worker is released to perform *any* type of work. However, relying upon the plain language of KRS 342.0011(11)(a), the Supreme Court held "[i]t would not be reasonable to terminate the benefits of an employee when he is released to perform minimal work but not the type that is customary or that he was performing at the time of his injury." *Id.* at 659. Thus, a release "to perform minimal work" does not constitute a "return to work" for purposes of KRS 342.0011(11)(a).

■ Thus, as defined by the statute, there are two requirements for an award of TTD benefits: first, the worker must not have reached MMI; and, second, the worker must not have reached a level of improvement that would permit him to return to the type of work he was performing when injured or to other customary work. Absent either requirement, a worker is not entitled to TTD benefits. Furthermore, pursuant to the construction assigned under *Wise*, KRS 342.0011(11)(a) takes into account two distinct realities: first, even if a worker has not reached MMI, temporary disability can no longer be characterized as total if the worker is able to return to the type of work performed when injured or to other customary work; and, second, where a worker has not reached MMI, a release to perform minimal work does not constitute "a level of improvement that would permit a return to employment" for purposes of KRS 342.0011(11)(a).

The purpose of awarding income benefits, such as TTD, was explained by the Supreme Court in *Double L. Construction, Inc. v. Mitchell*, 182 S.W.3d 509 (Ky.2005), which applied the two-pronged TTD standard announced in *Wise*. The Supreme Court held:

> [t]he purpose for awarding income benefits such as TTD is to compensate workers for income that is lost due to an injury, thereby enabling them to provide the necessities of life for themselves and their dependents.

*Id.* at 514. The Court clarified that TTD is not based on a finding of AMA impair-

ment, nor based on an inability to perform *any* type of work. *Id.* at 515.

### 1. ABATEMENT OF CLAIM PENDING MMI DOES NOT MANDATE AWARD OF TTD

 Based on our reading of *Wise* and its progeny, therefore, we must reject Bowerman's argument that, "[i]n the absence of an agreement by the parties, the Workers' Compensation Act and the regulations promulgated thereunder do not permit an ALJ to place a claim in abeyance unless income benefits are initiated." [9] Clearly, under *Wise*, an ALJ could find that a claimant had not reached MMI and abate the claim pending completion of further treatment and improvement, but award no TTD benefits if the claimant had returned to the type of work performed when injured or to other customary work. Even so, based on the ALJ's initial factual findings, that is not the case in the present appeal.

### 2. ALJ'S ORIGINAL FACTUAL FINDINGS MANDATED AWARD OF TTD UNDER KRS 342.0011(11)(A)

 In the present case, the ALJ applied the wrong statutory definition and applicable case law to her original factual findings when she denied Bowerman TTD benefits in her interlocutory opinion, and later in her final opinion. The Board's decision affirming the ALJ's final opinion admits:

it is clear that the ALJ in her interlocutory opinion confused the definition of "permanent total disability" and "temporary total disability" when she found Bowerman was able to earn an income by providing services on a regular and

sustained basis in a competitive economy in denying additional TTD benefits. Any error contained in the decision, however, was not appealable based on the interlocutory nature of the opinion. *Transit Authority of River City v. Saling,* 774 S.W.2d 468 (Ky.App.1989).

The Board held the ALJ corrected this blatant error in her May 3, 2006, order denying Bowerman's petition for reconsideration. We disagree. Mere reference to the correct definition does not assuage the ALJ's continued failure to properly interpret and apply that statutory standard to the adjudicated factual findings she rendered in her interlocutory opinion.

The overwhelming weight of the lay and medical evidence adopted by the ALJ in her interlocutory opinion compelled an award of ongoing TTD benefits under any proper application of KRS 342.0011(11)(a) and *Wise.* By simply reasserting Bowerman had "reached a level of improvement that would permit a return to employment" in her order of May 3, 2006, the ALJ demonstrated her continued lack of understanding regarding the second prerequisite of the two-pronged TTD statutory definition announced in *Wise.*

The ALJ initially adopted the medical opinions of Dr. Davies in her interlocutory opinion, finding Bowerman had not reached MMI but had "reached a level of improvement that permitted his return to *some form of work* on October 25, 2004." In denying TTD benefits in her interlocutory opinion, the ALJ cited *McNutt Construction* as legal authority, but that case concerns the proper construction and application of KRS 342.0011(11)(b) and (c),

---

9. Bowerman does not cite which portions of the Workers' Compensation Act and regulations support his argument, but we note that his brief to the Board cited 803 KAR 25:010 § 12(5). While the plain language of 803

KAR 25:010 § 12(5) would require an ALJ to place a claim in abeyance if she orders payment of TTD benefits, it does not appear to require payment of TTD benefits simply because a claim is placed in abeyance.

the statutory definitions for permanent partial disability (PPD) or permanent total disability (PTD) benefits.

Thereafter, in her May 2006 order denying reconsideration, the ALJ referred to the correct statutory definition for TTD benefits while maintaining her conclusion that Bowerman "is not entitled to temporary total disability benefits." In holding Bowerman "does not meet the definition of temporary total disability under KRS 342.0011(11)(a)," the ALJ, with no further factual analysis, rationale, or explanation, simply reiterated her original conclusion that "I found and still find that plaintiff has reached a level of improvement that would permit *a return to employment* [as of October 25, 2004].

Clearly, the ALJ's adoption of Dr. Davies' medical opinions would have allowed her to determine Bowerman was capable of returning to "some form of work," but she could not have reasonably concluded he was capable of returning to the type of work he had performed at Black when injured or to other customary work. In her summary of the lay and medical evidence in her interlocutory opinion, the ALJ noted that after Bowermen resumed working for Black on October 25, 2004, he:

> worked for defendant in *a light duty capacity.* He was kept in the office in the parts room. He cleaned the office, took out the garbage, filled parts orders and pulled parts for customers. He said that he had problems performing this job because there was a lot of reaching involved. Some parts were too heavy and he could not pick them up. He could not kneel down or get down on his knees. His service manager, Donnie Hertter[,] would assist him in this job.

(Emphasis added). The ALJ also noted Bowerman's testimony regarding his having had problems performing these light duty activities, and his receipt of Black's

termination letter alleging he had refused to return to such light duty work.

In the same interlocutory opinion, the ALJ further noted Bowerman's customary work at Black was as a forklift operator, and that this was the type of work he was performing at Black when he sustained his work-related injury. According to Bowerman's uncontradicted testimony, his pre-injury work duties as a forklift operator included "lots of heavy lifting, doing engine repairs, pulling heads off, pulling motors out, transmissions, brake jobs, and pulling wheels and tires off." In performing these duties, Bowerman "tried not to lift anything over 100–120 pounds if he could help it."

Finally, the ALJ's interlocutory opinion noted Dr. Davies had initially examined Bowerman on April 22, 2005. At that time, Dr. Davies placed Bowerman on off-work status "because he was not getting better on light duty and was falling," and "to prevent any further injury."

Thus, the ALJ's own adjudicated factual findings rendered in her interlocutory opinion, which were based on her acceptance of the medical opinions of Dr. Davies, established that Bowerman had not reached MMI, required further medical treatment, did not qualify for an AMA impairment rating pending further improvement, and, most importantly for purposes of this appeal, could not return to the type of work he performed when injured or to other customary work. Based on these factual findings rendered by the ALJ in her interlocutory opinion, we hold proper application of KRS 342.0011(11)(a) and *Wise* compelled an award of ongoing TTD benefits during abatement of Bowerman's claim.

## V. CONCLUSION

For the foregoing reasons, the ALJ's final opinion and award of August 20, 2007,

is hereby reversed and the matter remanded for entry of a final award consistent with the holdings contained herein.

CAPERTON, Judge, Concurs.

KELLER, Judge, dissents and files separate opinion.

KELLER, Judge, Dissenting:

While I agree with a great deal of the majority's opinion, I disagree with their ultimate conclusions; therefore, I respectfully dissent and write separately.

I agree with the majority and the Board that the ALJ used the standard for determining permanent total disability, not the TTD standard, when she denied Bowerman's claim for TTD benefits in her interlocutory opinion. However, on reconsideration, the ALJ stated that Bowerman's condition did "not meet the definition of temporary total disability found in KRS 342.0011(11)(a)" and she found, using that standard, "that plaintiff has reached a level of improvement that would permit a return to employment."

Kentucky Revised Statute 342.0011(11)(a) defines temporary total disability as "the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment[.]" Thus, an injured employee is entitled to TTD benefits until he reaches maximum medical improvement or

> until the medical evidence establishes the recovery process, including any treatment reasonably rendered in an effort to improve the claimant's condition, is over, or the underlying condition has stabilized such that the claimant is capable of returning to his job, or some other employment, of which he is capable, which is available in the local labor market. *W.L. Harper Construction Compa-*

*ny, Inc. v. Baker,* 858 S.W.2d 202, 205 ( [Ky.App.]1993).

*Halls Hardwood Floor Co. v. Stapleton,* 16 S.W.3d 327, 329 (Ky.App.2000). Although the ALJ, in her order on reconsideration, did not cite *Halls Hardwood Floor Co.,* she did cite the correct statutory language. Therefore, the ALJ ultimately applied the correct standard when she determined that Bowerman was not entitled to interlocutory TTD benefits. Because the ALJ had previously summarized the facts, she was not required to do more. *See Big Sandy Community Action Program v. Chaffins,* 502 S.W.2d 526 (Ky.1973).

Furthermore, I note that, although there was evidence to the contrary, Dr. O'Brien stated that Bowerman could return to work with no restrictions. Dr. O'Brien's opinion is probative evidence, sufficient to support the ALJ's finding. Although I might have found otherwise, because the ALJ ultimately applied the correct standard and Dr. O'Brien's opinion supported her findings, I do not believe this Court can disturb those findings on appeal.

I also agree with Bowerman, the Board, and the majority that the ALJ's finding in the interlocutory opinion regarding when Bowerman reached maximum medical improvement is inconsistent with her finding on that issue in her final opinion. In fact, as the majority notes, when the ALJ adopted the interlocutory opinion in her final opinion, she made her final opinion internally inconsistent. However, I disagree with the majority that this inconsistency merits reversal. I do so because I believe that the ALJ initially denied Bowerman's request for interlocutory TTD benefits based on her assessment of his ability to return to work. She did not base that opinion on when he reached maximum medical improvement. Therefore, when Bowerman reached maximum medical im-

provement is not dispositive, and the change in the ALJ's opinion regarding that date is irrelevant. Because I believe the ALJ's inconsistent findings regarding maximum medical improvement are not dispositive and are irrelevant, I do not believe the majority's analysis regarding an ALJ's ability to alter her findings is necessary. However, I do not disagree with that analysis.

I respectfully disagree with the majority's opinion that the "overwhelming weight of the lay and medical evidence adopted by the ALJ in her interlocutory opinion compelled an award of ongoing TTD benefits ..." for two reasons. First, as noted above, Dr. O'Brien stated that Bowerman could return to work without restriction, which was sufficient evidence of substance to support the ALJ's opinion. Second, the ALJ, not this Court, is saddled with the job of weighing the evidence. While Dr. Davies and Dr. Berkman limited Bowerman's ability to perform work activity, I can find nothing in the record that so denigrates Dr. O'Brien's opinion that the ALJ was compelled to ignore or discount it. Therefore, although I might have found differently, I do not believe that the ALJ was compelled to do so.

I also agree with the majority that an ALJ who places a claim in abeyance is not required to award TTD benefits. In doing so, I note that 803 KAR 25:010 § 12 states that an ALJ may order interlocutory relief in the form of income, medical expense, or rehabilitation benefits. Under paragraph 5, "[i]f interlocutory relief is awarded in the form of income benefits, the application shall be placed in abeyance unless a party shows irreparable harm will result." Based on the plain language of 803 KAR 25:010 § 12(5), an ALJ is required to place a claim in abeyance if she orders payment of TTD benefits. However, she is not required to order payment of TTD benefits

simply because she places a claim in abeyance. Had the legislature or the Department of Workers' Claims wanted to make this requirement, either could have done so.

Finally, I painfully recognize and greatly sympathize with Bowerman's frustration regarding the course his claim took. However, the ALJ's ultimate findings, despite being imperfect and delayed, were supported by the evidence and not contrary to law. Therefore, I would reluctantly affirm the Board who affirmed the ALJ.