# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 18, 2021
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0718-WC

JOHN BANNON                                                      APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.                          NO. 2018-CA-1112
WORKERS' COMPENSATION
NO. 14-WC-68234

FORD MOTOR COMPANY; HONORABLE                               APPELLEES
STEPHANIE KINNEY, ADMINISTRATIVE
LAW JUDGE AND WORKERS'
COMPENSATION BOARD


**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

John Bannon appeals the Court of Appeals' opinion affirming the order of

the Workers' Compensation Board ("Board") which dismissed Bannon's Notice

of Cross-Appeal as untimely filed. After review of the record and applicable

law, we affirm.

## I. BACKGOUND

In the underlying workers' compensation claim, which resulted from an

injury Bannon sustained while working on the assembly line at Ford Motor

Company, the Administrative Law Judge ("ALJ") awarded Bannon temporary

total disability benefits, as well as 27% permanent partial disability benefits.

After the ALJ ruled on both parties' Petitions for Reconsideration, Ford timely filed, on March 22, 2018, its Notice of Appeal to the Board pursuant to 803 KAR[1] 25:010 Section 22(2)(a), which permits an appeal within thirty days of an ALJ's decision. On April 6, 2018, Bannon attempted to file a Notice of Cross-Appeal per 803 KAR 25:010 Section 22(2)(d), which allows for a cross-appeal to be filed within ten days after the Notice of Appeal is served. Per that 10-day regulation, Bannon's Notice of Cross-Appeal was due by April 2, 2018, four days before he attempted to file it. The Board dismissed Bannon's Notice of Cross-Appeal as untimely per 803 KAR 25:010 Section 22(2)(e), which mandates the dismissal of any notice of appeal or cross-appeal that is not filed within the time allowed. The Court of Appeals affirmed the Board and this appeal followed.

## II. ANALYSIS

The well-established standard of review for the appellate courts of a workers' compensation decision "is to correct the [Workers' Compensation] Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky. 1992). With respect to questions of law, an appellate court reviews *de novo* a decision of the Board or ALJ regarding proper interpretation of the law or its application to the facts. *Miller*

---

[1] Kentucky Administrative Regulations.

2

*v. Tema Isenmann, Inc.,* 542 S.W.3d 265, 270 (Ky. 2018) (citing *Bowerman v. Black Equip. Co.,* 297 S.W.3d 858, 866 (Ky. App. 2009)).

The law is well-settled that the filing of a notice of appeal or cross-appeal to invoke a court's jurisdiction "within the prescribed time frame is still considered mandatory, and failure to do so is fatal to the action." *Workers' Comp. Bd. v. Siler,* 840 S.W.2d 812, 813 (Ky. 1992) (citing CR[2] 73.03(2)); *City of Devondale v. Stallings,* 795 S.W.2d 954 (Ky. 1990); *Rainwater v. Jasper & Jasper Mobile Homes,* 810 S.W.2d 63 (Ky. App. 1991)). *Cf. Ready v. Jamison,* 705 S.W.2d 479, 481–82 (Ky. 1986) (holding that nonjurisdictional defects in the notice of appeal should not result in automatic dismissal; rather, the Court should consider any harm or prejudice resulting from the defect in deciding the appropriate sanction). In *Stallings,* this Court observed that "[t]here are policy considerations that mandate strict compliance with the time limit on filing of the notice of appeal. . . . CR 73.02(2) singles out the timely filing of a notice of appeal as being different from other rules relating to appeals and mandates that '[t]he failure . . . to file notice of appeal within the time specified in this Rule . . . shall result in a dismissal of the appeal.'" 795 S.W.2d at 957.

In *Siler,* we stated that "[t]he Board is granted the authority under KRS[3] 342.260 to promulgate regulations necessary to carry on its work, including regulations necessary for reviewing decisions of the ALJ. KRS 342.285." 840 S.W.2d at 812–13. Consistent with this grant of authority, the Board

---

[2] Kentucky Rules of Civil Procedure.

[3] Kentucky Revised Statutes.

3

promulgated 803 KAR 25:010, which expressly provides that "[f]ailure to file the notice within the time allowed *shall* require dismissal of the appeal." 803 KAR 25:010 § 22(2)(e) (emphasis added). Case law is clear that "shall" is mandatory language, as opposed to permissive. *Miller v. Tema Isenmann, Inc.*, 542 S.W.3d 265, 274 (Ky. 2018).

Nevertheless, Bannon implores us to apply the doctrine of substantial compliance to save his tardy Notice of Cross-Appeal. To explain his delay in filing, Bannon asserts that he was prevented from receiving timely notice of Ford's filing of its Notice of Appeal because of a technical issue with LMS, the Litigation Management System of electronic filing utilized in the filing and processing of workers' compensation claims. Bannon maintains that he did not receive notice that Ford had filed a Notice of Appeal until April 6, 2018, when counsel for Bannon was trying to access LMS to file a Motion for Attorney's Fees. Upon discovering Ford's Notice of Appeal, Bannon immediately filed a motion for leave to file his Notice of Cross-Appeal and included as an exhibit his e-mail communication dated April 6, 2018 with the Department of Workers' Claims ("DWC"), which Bannon contacted about his inability to access LMS. In that April 6, 2018 e-mail correspondence, the DWC representative replied: "I see Chad Jennings [Bannon's counsel] on the appeal, but I am not seeing him associated to the claim. You may need to re-associate to this claim. The access # is: 4409784. If this doesn't work, please let us know. Thanks! Austin Wright Maddox."

4

Bannon argues this evidence demonstrates an LMS technical malfunction and is sufficient to excuse his delay in filing. However, 803 KAR 25:010 Section 4(1) anticipated and addressed the issue of technical difficulties, providing:

> Section 4. Technical Difficulty: Litigation Management System Unavailability. (1) Jurisdictional Deadlines. A jurisdictional deadline shall not be extended. A technical failure, including a failure of LMS, shall not excuse a failure to comply with a jurisdictional deadline. The filing party shall insure that a document is timely filed to comply with jurisdictional deadlines and, if necessary to comply with those deadlines, the filing party shall file the document conventionally accompanied by a certification of the necessity to do so in order to meet a jurisdictional deadline.

Thus, 803 KAR 25:010 Section 4(1) does not excuse jurisdictional deadline issues. And under the substantial compliance rule, the failure to timely file a notice of appeal or cross-appeal is not one of the procedural steps deemed not to affect the validity of the appeal. *Siler*, 840 S.W.2d at 813 (citing CR 73.03(2); *Ready,* 705 S.W.2d at 479; *Smith v. Goodyear Tire & Rubber Co.,* 772 S.W.2d 640 (Ky. App. 1989)). Citing *Jenny Wiley Health Care Center v. Commonwealth,* 828 S.W.2d 657 (Ky. 1992), the *Siler* court reiterated that "under CR 73.02(2) and *Ready v. Jamison,* Jenny Wiley Health Care Center's good-faith attempt to file notice of appeal would require an automatic dismissal because it did not meet the time specifications of the agency regulation." *Id.*

Bannon asserts that the rule set forth in *Siler* is inapposite, as that case was rendered in 1992 and electronic filings did not exist then. He argues that the practical ramification of *Siler* and the Court of Appeals' decision here places

5

an unreasonable burden on counsel of record to check LMS daily to determine whether access has been lost or whether any new filings have been made. Bannon asserts that a better rule would be to apply the substantial compliance doctrine to DWC cases like this in which a party has demonstrated an LMS malfunction with the filing system.

However, we find that in this case, the rules and regulations governing the timeliness of a notice of appeal require strict compliance, regardless of whether the case was litigated using the LMS. As noted above, 803 KAR 25:010 Section 4(1) contemplated this exact issue and expressly states that "[a] technical failure, including a failure of LMS, shall not excuse a failure to comply with a jurisdictional deadline." Here, both parties to this litigation bore the responsibility for exercising reasonable due diligence in maintaining their filings and keeping track of the progress of the case, including the timeframe for filing a notice of appeal and cross-appeal. To this point, Bannon does not argue that he was unaware of the ALJ's issuance of its decision in this case. Thus, he could have, and should have, been aware of the date by which a notice of appeal was due. Bannon's filing of his Notice of Cross-Appeal on April 6, 2018 was inexcusably four days late, regardless of whether he experienced any technical difficulty with LMS. Because Bannon failed to comply with the time specifications of the regulation, the Court of Appeals did not err as a matter of law in affirming the Board's dismissal of his cross-appeal as untimely filed.

6

Lastly, any challenges Bannon raises with respect to the constitutionality of the retroactive application of KRS 342.730(4) are outside the scope of this appeal because of his failure to timely raise them on cross-appeal. Moreover, those issues have largely been resolved. On the same day the Court of Appeals issued the opinion at bar, ruling on the timeliness of Bannon's Notice of Cross-Appeal, it also issued a separate opinion deciding the merits of Ford's appeal in this matter. In its opinion addressing the merits of Ford's appeal, the appellate court reversed the Board, and held that "as a matter of law, Bannon's claim is not subject to the tier-down provisions of the 1994 statute as applied by the Workers' Compensation Board, but rather it is subject to the 2018 amendments to KRS 342.730(4)." *Ford Motor Co. (KTP) v. Bannon*, 2018-CA-001086-WC, 2019 WL 5854030, at *3 (Ky. App. Nov. 8, 2019). The Court of Appeals remanded the case to the Board with instructions to apply the current version of KRS 342.730 to Bannon's award of benefits in this case. *Id.* Accordingly, even though disallowed from proceeding with his cross-appeal, Bannon has been afforded all the necessary due process protections to which he was entitled in challenging the Board's application of KRS 342.730(4).

### III.    CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals.

All sitting. Minton, C.J.; Conley, Hughes, Nickell and VanMeter, JJ., concur. Lambert, J., dissents by separate opinion in which Keller, J., joins.

7

LAMBERT, J., DISSENTING: Respectfully, I dissent. I would reverse the Court of Appeals and hold that, under the facts and circumstances of this case, it was error for the Worker's Compensation Board ("Board") to deny Bannon's motion for leave to file his cross-appeal.

The following facts are not disputed. The parties in this case agreed to use only the Department of Workers' Claims' Litigation Management System (LMS) for filings. Ford timely filed its notice to the Board via LMS on March 22, 2018. But, due to an error with LMS that was neither Ford nor Bannon's fault, Bannon did not receive Ford's notice of appeal until April 6, 2018. April 6 was four days after Bannon's deadline to file a cross-appeal. On April 6, the same day counsel discovered the error, Bannon filed a motion for leave to file his cross-appeal. Significantly, Ford did not object to this motion. The Board nonetheless dismissed Bannon's motion as untimely.

I do not dispute that Ford followed the controlling statute regarding its appeal to the Board, 803 KAR 25:010 § 22(2) and filed a timely appeal. I also do not dispute that 803 KAR 25:010 § 4(1) clearly provides that "[a] jurisdictional deadline shall not be extended[,]" and that "[a] technical failure, including a failure of LMS, shall not excuse a failure to comply with a jurisdictional deadline." However, I feel that strict adherence to those regulations under these facts, so to speak, misses the forest for the trees.

Bannon, like all litigants, was entitled to *notice* that Ford intended to appeal the ALJ's decision to the Board. The very reason that litigants are entitled to notice of an opposing party's intent to appeal is so that they have

8

the opportunity to respond to that appeal if they so choose. A cross-appeal, such as Bannon's, is by its very nature filed *in response* to an appeal. But, because of a technical error with LMS, Bannon was stripped of his right to notice and his opportunity to respond. It is entirely unfair to expect Bannon to meet a deadline he did not, and due to the LMS error *could not*, know existed. Notwithstanding the administrative regulations to the contrary, under these circumstances the Board should have recognized Bannon's substantial compliance with his filing deadline and allowed him to file his cross-appeal. Due process so demands.

Keller, J., joins.

COUNSEL FOR APPELLANT:

Charles E. Jennings
Jennings Law Office


COUNSEL FOR APPELLEE,
FORD MOTOR COMPANY:

George Timothy Todd Kitchen III
Reminger Co., LPA

COUNSEL FOR APPELLEE,
STEPHANIE LETITIA KINNEY:

Not Represented by Counsel

COUNSEL FOR APPELLEE,
WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey