RENDERED: DECEMBER 10, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0451-WC

CAMBRIAN HOLDING COMPANY,
INC.                                                    APPELLANT


                    PETITION FOR REVIEW OF A DECISION
v.               OF THE WORKERS' COMPENSATION BOARD
            ACTION NOS. WC-18-60509, WC-19-00595, AND WC-19-01095


L.D. SEXTON; APPALACHIAN
REHABILITATION TEAM; FUGATE
FAMILY CHIROPRACTIC; DR.
JAMES VARNEY; DR. JOHN
GILBERT; KENTUCKY MOUNTAIN
HEALTH; KENTUCKY PAIN
MANAGEMENT SERVICES;
MOUNTAIN COMPREHENSIVE
HEALTH CORPORATION;
HONORABLE PETER NAAKE,
ADMINISTRATIVE LAW JUDGE;
PIKEVILLE MEDICAL CENTER;
PIKEVILLE NEUROLOGY; SPINE
AND BRAIN NEUROSURGICAL; DR.
VAN BREEDING; WHITESBURG
ARH; AND WORKERS'
COMPENSATION BOARD                                        APPELLEES

<u>OPINION</u>
<u>AFFIRMING</u>

\*\* \*\* \*\* \*\* \*\*

BEFORE:  ACREE, GOODWINE, AND JONES, JUDGES.

JONES, JUDGE:  Cambrian Holding Company Inc. ("Cambrian"), has petitioned this Court for review of a decision of the Workers' Compensation Board ("the Board"), which affirmed the October 9, 2020 opinion, order, and award rendered by the Administrative Law Judge ("ALJ").  On appeal, Cambrian asserts the Board erred as a matter of law when it held that the time limits for the submission of medical bills set out in KRS[1] 342.020(4) and 803 KAR[2] 25:096 §11 apply only after entry of an interlocutory or final award.  Having reviewed the record and being otherwise sufficiently advised, we affirm.

## I. BACKGROUND

On October 9, 2018, while working as an underground coal miner for Cambrian, Sexton struck his head on the mine roof.  Sexton reported to the job site the next day but was unable to work because he could not lift his arms.  He sought medical care from Dr. Van S. Breeding.  Sexton's chief complaint was neck pain.  After conservative treatment failed, Sexton was referred to Dr. John Gilbert, a

---

[1]  Kentucky Revised Statutes.

[2]  Kentucky Administrative Regulations.

neurosurgeon. Dr. Gilbert recommended Sexton undergo a cervical fusion surgery. Dr. Gilbert performed the surgery in January 2020.

Sexton never returned to work and requested Cambrian to provide him with temporary wage and medical benefits. However, Cambrian denied Sexton's claim. Sexton's health insurance covered his surgery. Eventually, Sexton filed a specific injury claim with the Department of Workers' Claims as related to the October 9, 2018 incident alleging cervical, thoracic, lumbar, and psychiatric injuries. He also filed separate hearing loss and coal workers' pneumoconiosis ("CWP") claims. Sexton's claims were consolidated and assigned to a single ALJ for adjudication.

Following the submission of proof and a final evidentiary hearing, the ALJ rendered an opinion, order, and award. Therein, the ALJ: (1) dismissed Sexton's CWP claim; (2) awarded only medical benefits for Sexton's hearing loss claim; (3) determined that the October 9, 2018 incident caused a temporary psychological injury for which Sexton was entitled to medical benefits from the date of injury through May 4, 2020, the date of maximum medical improvement; (4) concluded that Sexton failed to demonstrate any permanent injuries to his lumbar and thoracic spine and dismissed his claim for permanent partial disability and future medical benefits for those alleged injuries; and (5) found that the October 9, 2018 incident caused Sexton to suffer a cervical spine injury which left

him 28% permanently impaired and rendered him totally and permanently disabled entitling Sexton to temporary total disability benefits, permanent total disability benefits, and past and future medical benefits, including compensation for the cervical fusion surgery.

Cambrian appealed the ALJ's award to the Board. Before the Board, Cambrian argued that the ALJ erred in failing to account for Sexton's preexisting active cervical spine issues and in finding him totally disabled. Cambrian also asserted that the ALJ erred in concluding that it was responsible for past medical expenses, which were not submitted in accordance with the time limits prescribed by KRS 342.020(4) and 803 KAR 25:096 §11. After the Board affirmed the ALJ, Cambrian petitioned this Court for further review. In this appeal, Cambrian contests only the portion of the Board's opinion which holds KRS 342.020(4) and 803 KAR 25:096 §11 do not apply pre-award.

## II. STANDARD OF REVIEW

The question before us is one of pure statutory and regulatory interpretation. "As a reviewing court, we are bound neither by an ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. In either case, our standard of review is *de novo*." *Bowerman v. Black Equipment Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009).

-4-

## III. ANALYSIS

In relevant part, KRS 342.020(4) states that "the provider of medical services shall submit the statement for services within forty-five (45) days of the day treatment is initiated and every forty-five (45) days thereafter, if appropriate, as long as medical services are rendered." Additionally, 803 KAR 25:096 §11 provides:

> Section 11. Request for Payment for Services Provided or Expenses Incurred to Secure Medical Treatment.
>
> (1) If an individual who is not a physician or medical provider provides compensable services for the cure or relief of a work injury or occupational disease, including home nursing services, the individual shall submit a fully completed Form 114 to the employer or medical payment obligor within sixty (60) days of the date the service is initiated and every sixty (60) days thereafter, if appropriate, for so long as the services are rendered.
>
> (2) Expenses incurred by an employee for access to compensable medical treatment for a work injury or occupational disease, including reasonable travel expenses, out-of-pocket payment for prescription medication, and similar items shall be submitted to the employer or its medical payment obligor within sixty (60) days of incurring of the expense. A request for payment shall be made on a Form 114.
>
> (3) Failure to timely submit the Form 114, without reasonable grounds, may result in a finding that the expenses are not compensable.

Before the Board, Cambrian argued that the ALJ erred in ordering it to provide compensation for the medical expenses not submitted in accordance

with KRS 342.020(4) and 803 KAR 25:096 §11. The Board, however, concluded that the ALJ correctly interpreted the submission requirements as applying only after an award had been entered by an ALJ. Cambrian urges us to reverse on the basis that the Board misinterpreted the statute and its accompanying regulations.

This exact issue was recently decided by the Kentucky Supreme Court in *Wonderfoil, Inc. v. Russell*, 630 S.W.3d 706 (Ky. 2021). In that case, the claimant, Richard Russell, sustained an injury to his right arm while working for Wonderfoil. Before the ALJ, Wonderfoil admitted the injury was compensable; however, it argued that the ALJ should not order it to compensate Russell for past medical expenses not submitted in accordance with KRS 434.020(4) and 803 KAR 25:096 §11. The ALJ agreed with Wonderfoil and ruled that Russell's unpaid medical expenses were not compensable based on the untimely submissions. Russell appealed to the Board. The Board reversed holding that the submission requirements apply only after an interlocutory decision or final award has been entered by the ALJ. After this Court affirmed the Board, Wonderfoil sought further review from the Kentucky Supreme Court.

The Supreme Court first examined 803 KAR 25:096 §11(2)'s requirement that "[e]xpenses incurred by an employee for access to compensable medical treatment . . . shall be submitted to the employer or its medical payment obligor within sixty (60) days of incurring of the expense." The Court determined

that the statute was ambiguous because it was impossible to tell whether it "applies only post-award, during litigation but pre-award, or even before the potential claimant files his claim." *Wonderfoil, Inc.*, 630 S.W.3d at 710. The Court then examined 803 KAR 25:096 §11(2) in the context of the broader scheme established by the Department of Workers' Compensation's administrative regulations. In so doing, the Court noted that various other regulations required the claimant to disclose and submit unpaid medical expenses prior to final adjudication by the ALJ. *See* 803 KAR 25:010 §7; 803 KAR 25:010 §13(9)(a). It concluded that interpreting 803 KAR 25:096 §11(2)'s sixty-day requirement to apply before entry of an award would "result in a direct contradiction with 803 KAR 25:010 § 7(2)(f), which requires the claimant disclose unpaid medical bills within forty-five days of filing his claim and within ten days of receiving new bills after the initial forty-five days has passed." *Wonderfoil, Inc.*, 630 S.W.3d at 711. Ultimately, the Court held that 803 KAR 25:096 §11 applies only post-award because this interpretation was the only way to avoid a contradictory and absurd result. *Id.*

The Court rejected Wonderfoil's argument that interpreting KRS 342.020(4) and 803 KAR 25:096 §11(2) to apply only post-award would result in unfair surprise and hardship to employers. It explained:

> Additionally, our interpretation does not offend due process by creating unfair surprise to employers, despite arguments made otherwise to this Court. Even under our interpretation of 803 KAR 25:096, § 11(2), a claimant is

-7-

still required to submit medical expenses they wish to have paid pursuant to 803 KAR 25:010, §§ 7 and 13. Those medical expenses must be included in the claimant's notice of disclosure that must be filed within forty-five days of the issuance of the Notice of Filing of Application. 803 KAR 25:010, §7(2)(e)7. The claimant is then under a continuing obligation to turn over new medical expenses within ten days of receiving those expenses pursuant to 803 KAR 25:010, §7(2)(f). Further, a claimant is required to bring copies of unpaid medical bills and expenses to the benefit review conference. 803 KAR 25:010, §13(9)(a). If he or she fails to do so and does not show good cause, such failure "may constitute a waiver to claim payment for those bills." *Id.* These requirements prevent employers from being unfairly surprised by requested medical expenses and provide a mechanism by which claimants may be penalized for failure to comply.

*Wonderfoil, Inc.*, 630 S.W.3d at 713.

In keeping with the above explanation, the Court observed that Wonderfoil "did not defend on the basis of Russell's failure to submit his medical expenses under any other regulation [such as 803 KAR 25:010, §7 or KAR 25:010, §13(9)]." *Id.* It cautioned, however, that had Wonderfoil done so, the result may have been different.

In his opinion, order, and award, the ALJ explicitly stated that Sexton "filed medical billing regarding all denied medical treatment, mileage, out-of-pocket expenses and co-payments[.]" We presume the ALJ was referring to Sexton's filing requirements under 803 KAR 25:010 §7 and KAR 25:010 §13(9). In any event, Cambrian did not argue before either the Board or this Court about

-8-

any noncompliance with these regulations. Like Wonderfoil, Cambrian defended solely on the basis that it should not have liability for medical expenses submitted outside the time frames established by KRS 342.020(4) and 803 KAR 25:096, §11(2). The Board properly rejected Cambrian's argument since no award had been entered prior to the ALJ's October 9, 2020 opinion, order, and award. *Wonderfoil, Inc.*, 630 S.W.3d at 711.

## IV. CONCLUSION

For the reasons set forth above, we affirm the Workers' Compensation Board.

ALL CONCUR.

| BRIEF FOR APPELLANT: | BRIEF FOR APPELLEE L.D. SEXTON: |
|---|---|
| W. Barry Lewis Hazard, Kentucky | Emily Faith Wetmore Hazard, Kentucky |