RENDERED: FEBRUARY 19, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2025-SC-0204-WC

GRAYBAR ELECTRIC                                                    APPELLANT


V.
ON APPEAL FROM COURT OF APPEALS
NO. 2024-CA-1421
WORKERS' COMPENSATION NO. WC-18-83724


JEREMY STARR; HONORABLE W.                                    APPELLEES
GREG HARVEY, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD

## OPINION OF THE COURT BY JUSTICE GOODWINE

## REVERSING

Graybar Electric ("Graybar") appeals from the opinion of the Court of Appeals reversing the Workers' Compensation Board's ("Board") affirming the Administrative Law Judge's ("ALJ") opinion and remanding to the ALJ with instructions to enter additional findings of fact and conclusions of law. For the reasons set forth below, we reverse the Court of Appeals' opinion and reinstate the Board's decision.

## BACKGROUND

On July 10, 2019, Jeremy Starr ("Starr") filed a claim for injuries that occurred on March 20, 2018. During his employment as a delivery driver for

Graybar, Starr pulled a bundle of pipes from a truck and hurt his back.[1]

Prior to the work-related incident, Starr had a 2004 motor vehicle accident ("MVA"). Starr had a lumbar MRI on January 20, 2005. The MRI report notes a left paracentral disc herniation at L5-S1 with effacement of the left S1 nerve root and mild ligamentum flavum and hypertrophic facet changes at L4-5 and L5-S1. Starr was treated with therapy and a bilateral facet region block at L4-5 and L5-S1. Starr was placed off work on medical leave and was prescribed Lortab. He was released back to regular work duty in December 2005, and he continued to complain of low back pain that radiated to his hips and some shoulder pain through August 30, 2007.

Starr first sought treatment for his back pain in June 2018 and was eventually referred for a lumbar MRI, which he had on February 21, 2019. The 2019 MRI revealed a disc protrusion at L4-5 and L5-S1. Starr was diagnosed with lumbar back pain and L4-5 and L5-S1 disc herniation with nerve root compression at L5-S1.

Dr. Barefoot conducted an evaluation at Starr's request. Dr. Barefoot diagnosed Starr as having a "history of herniated disc at L4-5 and L5-S1 with ongoing radicular pain/symptoms." The report did not state whether this history dated back to the 2004 MVA or arose after the work incident. Dr.

---

[1] In April 2018, Graybar terminated Starr for unrelated reasons. Starr did not report the work event until after his termination. In May 2018, Starr was hired by Spectrum as an independent collections contractor, and he was terminated from that position in November 2019. At the time of his deposition in January 2020, Starr had not obtained new employment.

Barefoot opined that the diagnosis directly resulted from Starr's 2018 workplace injury, and Starr reached MMI on March 12, 2019, if no further treatment was available.

Dr. Sexton evaluated Starr at Graybar's request. Dr. Sexton took a history of the work incident and 2004 MVA. Dr. Sexton reviewed medical records and a film of the most recent MRI imaging study and diagnosed Starr with a history of L4-5 and L5-S1 complaints from 2005 through 2007 after the MVA. Dr. Sexton opined that the 2019 MRI showed the same findings as the 2004 MRI, with an additional finding of a Schmorl's node, which he noted indicated a healed disc herniation without surgical repair. He observed chronic degenerative changes. He disagreed with Dr. Barefoot's assessment and the 2005 MRI and opined that the 2004 MVA resulted in frank disc herniation at L4-5 and L5-S1.

On March 20, 2020, the ALJ entered an interlocutory opinion, award, and order finding Starr suffered at least a lumbar strain from the 2018 work incident based on both Dr. Barefoot's and Dr. Sexton's evaluations. The ALJ found Starr sustained two disc herniations at L4-5 and L5-S1 from the 2004 MVA and did not sustain new disc herniations from the 2018 work incident. Additionally, the ALJ found Starr was not at MMI and required additional medical treatment to determine whether permanent injury occurred. The ALJ placed this claim in abeyance pending Starr's treatment. The question of permanent income benefits and medical benefits for the lumbar spine was reserved for future adjudication.

Starr's condition did not improve after conservative treatment, and he was referred to Dr. Charles Crawford, an orthopedic surgeon. In January 2021, Starr had another MRI, which revealed marrow edema in the right L5 more than the left and mild edema in both L4 pedicles. The report stated that the findings at L5-S1 were more conspicuous than in the prior study. The report also found a 2mm retrolisthesis at L5-S1 and mild canal stenoses at L4-5 due to diffuse spondylosis, disc displacement, and severe facet hypertrophy. A February 22, 2021 lumbar CT myelogram showed spondylolisthesis at L4 on L5 by approximately 3-4 mm, and at L5-S1, bulging disc material in addition to disc protrusion. Dr. Crawford recommended a lumbar fusion to treat the spondylolisthesis and a decompression at L5-S1 to treat stenosis and a disc herniation.

In January 2022, Dr. Crawford performed surgery with Dr. George Raque, a neurosurgeon, to treat spondylolisthesis. On January 4, 2022, Starr had an anterior fusion at L4-5 and L5-S1, and on January 5, he had a posterior spine decompression at L4-S1. Dr. Crawford's operative note stated a diagnosis of spondylolisthesis caused by the work injury.

Following the surgery, Dr. Thomas Menke evaluated Starr at Graybar's request. Dr. Menke diagnosed Starr with a lumbar strain caused by the work incident. Dr. Menke noted Starr's 2004 and 2019 lumbar MRIs were almost identical and opined the L5-S1 herniation and hypertrophic changes were caused by the 2004 MVA. Dr. Menke opined that the L4-5 spondylolysis diagnosis after the CT myelogram was a new finding not documented on the

4

March 28, 2019, study. Dr. Menke concluded that the need for a fusion surgery at the L4-5 level was not due to the work incident but instead was due to degenerative changes that began after the motor vehicle accident and documented disc herniation in 2004. Dr. Menke submitted several addenda, but his opinion that the surgery was not work-related, based on the MRI reports from 2004 and 2019, remained unchanged.

The ALJ issued a second interlocutory opinion on April 7, 2022, after Graybar filed a medical dispute regarding the surgery's compensability. The ALJ agreed with Dr. Menke's opinion that the fusion surgery was directed at the degenerative process in Starr's spine and not the effects of the work injury because the spondylolisthesis was not present in the 2019 MRI. Thus, the ALJ found the lumbar fusion surgery to treat spondylolisthesis and spondylolysis was not work-related and non-compensable.

After the second interlocutory opinion, Starr's counsel withdrew. Eventually, Starr obtained new counsel who requested the opportunity to develop additional proof. Starr was evaluated by Dr. Gregory Nazar, and counsel deposed Dr. Crawford. Dr. Nazar diagnosed low back pain, bilateral stress fractures at L4-5, degenerative changes, and disc herniations at L4-5 and L5-S1. Dr. Nazar assessed 25% whole person impairment solely attributable to the work injury. He opined the fusion surgery was warranted due to the progression of the work-related L4 and L5 stress fractures.

In his deposition, Dr. Crawford opined spondylolistheses are generally caused by wear and tear, but Starr's spondylolisthesis in the lumbar spine was

5

caused by the work injury. On cross-examination, Dr. Crawford opined that the spondylolisthesis could have begun following the 2004 MVA and continued to develop over years, leading up to the work injury. Dr. Crawford stated that he agreed with Dr. Nazar's opinion.

On April 15, 2024, the ALJ issued his opinion, award of temporary total disability ("TTD"), and order. The ALJ adopted the second interlocutory opinion in which he found Starr's January 2022 surgery was non-compensable and accurately restated those findings in the final order. As to Starr's additional evidence, the ALJ opined that the interlocutory holding could not be revisited to consider Starr's additional evidence under *Bowerman v. Black Equipment Co.*, 297 S.W.3d 858 (Ky. App. 2009). The ALJ found Starr was entitled to TTD benefits from November 30, 2018 (when he was terminated by Spectrum) through October 19, 2020 (when Dr. Menke put him at MMI).

Graybar filed a petition for reconsideration contesting the period of Starr's entitlement to TTD. Graybar asserted Starr was working on November 30, 2018, and he was not terminated by Spectrum until November 2019. Additionally, Starr was not taken off work by Dr. Crawford until July 2, 2020.

The ALJ sustained the petition and amended the award. First, the ALJ found the November 19, 2018 termination date was contrary to Starr's testimony in which he indicated he was terminated by Spectrum in November 2019. Second, Starr returned to work until Dr. Crawford removed him on July 2, 2020. Finally, the ALJ found it made a typographical error regarding the date Dr. Menke placed Starr at MMI, which was October 19, 2020, and not

July 2, 2020. Thus, the ALJ awarded TTD benefits from July 2, 2020, through October 19, 2020.

Starr did not file a petition for reconsideration.

Starr appealed to the Board, which affirmed the ALJ's opinion and the order on petition for reconsideration. First, the Board held that the ALJ's misstatement of fact was not so unreasonable that it compelled a different result. The Board found Starr's argument was unpreserved because he failed to file a petition for reconsideration, which is required to preserve the right to contest an ALJ's factual findings under KRS 342.281. However, the Board addressed the merits of Starr's argument. The Board stated that the 2005 lumbar MRI report only revealed a disc herniation at L5-S1 and noted hypertrophic changes to L4-5, and Dr. Menke agreed with the 2005 MRI findings. Dr. Menke compared the 2005 MRI and 2019 MRI and found they were almost identical. He also noted that spondylolisthesis was not present on the 2019 MRI following the work injury. The Board found that although the ALJ incorrectly stated Starr had disc herniations at two levels from the 2004 MVA, Dr. Menke's report constitutes substantial evidence that the surgery for spondylolisthesis was not work-related and non-compensable. Thus, the finding was not so unreasonable as to compel a different result.

Second, the Board upheld the ALJ's determination that he could not "reverse a dispositive interlocutory factual finding on the merits in a subsequent final opinion absent a showing of new evidence, fraud, or mistake" under *Bowerman*, 297 S.W.3d at 867. The Board found Starr's new evidence

7

was not "newly discovered" because it could have been discovered earlier. Dr. Crawford treated Starr and could have been deposed at any time before the second interlocutory order. Dr. Nazar relied on existing medical records, and Starr's counsel could have sought his IME prior to the second interlocutory order. Thus, the Board found there were no grounds for permitting the use of this additional, cumulative evidence.

In a dissenting opinion, Stivers, Member, opined he would have vacated the ALJ's opinion and remanded for additional findings and an amended decision on two bases. First, the ALJ clearly misstated Dr. Menke's opinion of the 2005 MRI study. Second, the ALJ was required to re-adjudicate the compensability of the fusion surgery, reviewing all evidence and not summarily rejecting Starr's new evidence. The dissent opined that *Bowerman* did not prohibit introducing new evidence before all contested issues in the BRC order were resolved, and it did not require the introduction of newly discovered evidence; it only required the presence of new evidence. Because there was no objection to the new evidence, the ALJ should have considered it.

The Court of Appeals agreed with the Board's dissent and reversed and remanded the matter to the ALJ for additional findings of fact and conclusions of law. First, the Court of Appeals held that the ALJ mistakenly found that Starr sustained two herniated discs that resulted from the 2004 MVA injury. Second, the Court opined that the ALJ should have considered Starr's additional evidence because interlocutory orders are not appealable, and the parties agreed to the temporary status of the interlocutory orders by including

8

work-related injury/causation and pre-existing active disability/condition as contested issues in the BRC order for the final hearing. The Court of Appeals determined *Bowerman* was distinguishable and did not preclude the ALJ from correcting an erroneous factual finding in a prior interlocutory order. Starr presented new evidence and a mistake of fact, which meets the standard for an ALJ to reverse a dispositive interlocutory factual finding in a subsequent opinion.

This appeal followed.

## **STANDARD OF REVIEW**

It is well-established that we only correct the decision of the Board "where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Tryon Trucking, Inc. v. Medlin*, 586 S.W.3d 233, 238 (Ky. 2019) (quoting *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992)). "Our standard of review in workers' compensation claims differs depending on whether we are reviewing questions of law or questions of fact." *Ford Motor Co. v. Jobe*, 544 S.W.3d 628, 631 (Ky. 2018). "As a reviewing court, we are bound neither by an ALJ's decisions on questions of law or an ALJ's interpretation and application of the law to the facts. In either case, our standard of review is *de novo*." *Id.* (quoting *Bowerman v. Black Equip.* Co., 297 S.W.3d 858, 866 (Ky. App. 2009)).

"The ALJ as fact finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence." *LKLP*

9

*CAC Inc. v. Fleming,* 520 S.W.3d 382, 386 (Ky. 2017). "KRS 342.285 . . .

establishes a 'clearly erroneous' standard of review for appeals concerning

factual findings rendered by an ALJ and is determined based on

reasonableness." *Bowerman,* 297 S.W.3d at 866 (quoting *Special Fund v.*

*Francis,* 708 S.W.2d 641, 643 (Ky. 1986).

## **ANALYSIS**

On appeal, Graybar argues: (1) the ALJ's misstatement of fact is not

grounds for reversal, and (2) the Court of Appeals incorrectly distinguished

*Bowerman* based on a misunderstanding of the underlying facts.

First, Graybar argues the ALJ's misstatement of fact is not reversible

error because the issue is unpreserved or, alternatively, Starr failed to preserve

the ALJ's factual misstatement for appeal because he did not file a petition for

reconsideration asking for a correction of the misstatement.[2] KRS 342.281

requires a party to file a petition for reconsideration of the ALJ's award, order,

or decision within fourteen days, and the ALJ may only correct errors "patently

appearing upon the face of the award, order, or decision." Under KRS 342.285,"

if a petition for reconsideration is not filed as provided for in KRS 342.281, it

---

[2] We note that, in a footnote, the Court of Appeals determined a petition for reconsideration was not required for preservation because the issues raised are questions of law that are directly appealable to the Board. The Court of Appeals asserted the legal errors included whether the ALJ misapplied KRS Chapter 342 to the facts; made a clearly erroneous finding of fact; rendered an arbitrary or capricious decision; or committed an abuse of discretion. The Court of Appeals conflated the factual mistake argument with the new evidence argument and mischaracterized the misstatement of fact as a legal issue.

shall be conclusive and binding as to all questions of fact." Thus, Starr failed to preserve this issue.

However, to provide guidance, we will address the merits of Graybar's argument. Below, Starr argues that the ALJ's final opinion misstated that Dr. Menke opined that Starr sustained two disc herniations from the 2004 MVA. On appeal to this Court, Graybar argues the misstatement of fact was not material to understanding the medical evidence in this claim. When "the ALJ has made all necessary findings to resolve the issue at hand," the Board is not permitted to remand "for additional, unneeded findings that would be of no additional value in resolving the issues in the case, if for no other reason than judicial economy alone." *Tryon Trucking, Inc.*, 586 S.W.3d at 238. Additionally, we will not reverse an ALJ on a mistake of fact unless the "error in assessing the evidence is so flagrant as to cause gross injustice." *Id.*

Despite the ALJ's misattribution, there is evidence in the record that Starr sustained two disc herniations as a result of the 2004 MVA. The 2005 MRI report states that Starr had a disc herniation at L5-S1 and hypertrophic changes at L4-5. However, Dr. Sexton reviewed the 2005 MRI and disagreed with the report. He opined that Starr sustained disc herniations at both L5-S1 and L4-5 from the 2004 MVA. The ALJ correctly attributed this opinion to Dr. Sexton in both interlocutory orders. In the ALJ's final opinion, the background section correctly states both Dr. Sexton's and Dr. Menke's opinions. In the findings and conclusions, the ALJ misattributed Dr. Sexton's opinion that Starr suffered two disc herniations to Dr. Menke.

11

The ALJ clearly understood Dr. Sexton's and Dr. Menke's opinions. In the first interlocutory opinion, the ALJ weighed Dr. Sexton's opinion against Dr. Barefoot's in determining that only the lumbar strain was work-related, and Starr did not suffer new disc herniations due to the work incident. Dr. Sexton only evaluated Starr prior to the surgery, so his opinion pertained to the work-relatedness of Starr's injuries and not the work-relatedness of the fusion surgery.

In the second interlocutory order, the ALJ agreed with Dr. Menke's opinion that the fusion surgery was not work-related and non-compensable. Starr needed the fusion surgery to treat spondylolisthesis and spondylosis, which Dr. Menke attributed to degeneration of Starr's spine and not any specific incident. Additionally, Dr. Menke supported his opinion by noting that the 2019 MRI showed no spondylolisthesis, and this was first noted in the 2021 lumbar MRI and CT lumbar myelogram. Though Dr. Sexton opined Starr suffered two herniated discs and Dr. Menke opined he only suffered a disc herniation at L5-S1 from the 2004 MVA, both doctors opined that the 2005 MRI and 2019 MRI findings were nearly the same.

The ALJ's finding that the fusion surgery was not work-related and non-compensable does not rely on the existence of a L4-5 herniation dating back to the MVA. Correcting the misattributed opinion, which concerns the work-relatedness of the injury, would be of no additional value. Thus, the Board correctly declined to reverse the ALJ's final order based on the factual misstatement.

12

Second, Graybar argues the Court of Appeals distinguished *Bowerman* based on an inaccurate understanding of the underlying facts. The Court of Appeals opined that the ALJ had the discretion to weigh the evidence in full, including Dr. Crawford's deposition and Dr. Nazar's report because (1) the interlocutory orders are not appealable; (2) "the parties accepted the temporary status of the Interlocutory Orders by *overtly agreeing* to the open contested issues still subject to review at the final hearing;" (3) Starr presented new evidence; and (4) *Bowerman* did not prevent the ALJ from correcting its mistake of fact. *Starr v. Graybar Electric*, 2024-CA-1421-WC, 2025 WL 1271681, at *4 (Ky. App. May 2, 2025).

In *Bowerman*, the ALJ made a finding of fact in an interlocutory order regarding the extent and duration of any disability and entitlement to TTD benefits. *Bowerman*, 297 S.W.3d at 865. The ALJ incorporated those findings and rulings in the final opinion, but the ALJ rendered additional findings of fact and conclusions of law on the same issue that directly contradicted the findings in the interlocutory opinion. *Id.* Though the issue was decided in the interlocutory order, it was listed as a contested issue in the BRC order for the final decision. *Id.* at 862; 864-65. Unlike this case, the issue of fact was preserved by petition for reconsideration; there was no alleged misstatement of fact, nor any additional evidence submitted. *Id.* at 685. The *Bowerman* opinion held that an ALJ may not reverse a dispositive factual finding "absent newly discovered evidence, fraud, or mistake, parties have a reasonable expectation that they may rely on factual findings that have been fully and fairly

13

adjudicated by an ALJ, even when rendered in an interlocutory decision." *Id.* at 868 (citing *Garrett Mining Co. v. Nye,* 122 S.W.3d 513, 522 (Ky. 2003)).

Under KRS 342.125(1)(b), "'newly-discovered evidence' refers to evidence existing at the time of the initial proceeding that the moving party did not discover until recently and with the exercise of due diligence could not have discovered during the pendency of the initial proceeding." *Turner v. Bluegrass Tire Co., Inc.,* 331 S.W.3d 605, 609 (Ky. 2010). Such "evidence must not be merely cumulative or impeaching but must be material and, if introduced at reopening, probably result in a different outcome." *Id.* Additional expert opinions do not constitute newly-discovered evidence if they merely rehash "previously known facts." *Foley v. Commonwealth,* 425 S.W.3d 880, 887 (Ky. 2014).

The additional evidence Starr submitted does not meet the legal definition of newly-discovered evidence as pertains to the work-relatedness of the fusion surgery. Dr. Crawford's deposition was not newly-discovered evidence. He performed Starr's surgery, his treatment records were in the record, and were used by Dr. Menke in preparing his report. With the exercise of due diligence, Starr could have deposed Dr. Crawford prior to the second interlocutory order.

Dr. Nazar's report was not newly discovered evidence. Starr could have requested his evaluation prior to the second interlocutory order, as it was based on medical records that were already in the record. Both pieces of additional evidence are merely cumulative and rehash previously known facts.

14

The holding in *Bowerman* prohibits the result of the Court of Appeals' opinion in this case. First, *Bowerman* prohibits changing an interlocutory finding of fact in a subsequent order even though interlocutory orders are not appealable on their own. Second, the interlocutory factual finding at issue in *Bowerman* was listed as a contested issue for the final decision, so it is not a legal basis for an ALJ to revisit an interlocutory decision. Third, the additional evidence does not meet the legal definition of newly-discovered evidence. Finally, the ALJ did not have the opportunity to correct the misstatement of fact, and, under the appellate review standard, was not so flagrant as to cause gross injustice as discussed above. Thus, the Board correctly upheld the ALJ's decision because *Bowerman* prohibits revisiting the interlocutory finding issue that the fusion surgery was not work-related, and the misstatement of fact did not cause gross injustice.

## CONCLUSION

For the foregoing reasons, we reverse the Court of Appeals' opinion and reinstate the Board's decision.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Johanna F. Ellison
Fowler Bell PLLC

COUNSEL FOR APPELLEE, JEREMY STARR

Sean P. Lohman
The Lohman Law Offices PSC

ADMINISTRATIVE LAW JUDGE:

Hon. W. Greg Harvey

WORKERS COMPENSATION BOARD OF KENTUCKY:

Michael Wayne Alvey, Chairman