RENDERED: MARCH 19, 2026
TO BE PUBLISHED

# Supreme Court of Kentucky

2025-SC-0421-WC

TAMALA HARRIS                                           APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
NO. 2025-CA-0073
WORKERS' COMPENSATION BOARD
NO. WC-23-91685

MERCY HOME HEALTH; HONORABLE                      APPELLEES
PETER J. NAAKE, ADMINISTRATIVE
LAW JUDGE; AND WORKERS'
COMPENSATION BOARD OF
KENTUCKY

**OPINION OF THE COURT BY JUSTICE NICKELL**

**AFFIRMING IN PART AND REVERSING IN PART**

Tamala Harris appeals from an opinion of the Court of Appeals affirming a decision of the Workers' Compensation Board ("Board") which, in turn, affirmed the opinion, award, and order of the Administrative Law Judge ("ALJ"). She contends: (1) the ALJ erred by excluding mileage reimbursements from the calculation of her average weekly wage; (2) the Court of Appeals erred by dismissing her appeal in part as moot; (3) the ALJ erred by declining to award benefits relative to an unpaid medical bill; and (4) the Court of Appeals erred by rejecting a motion for leave to file an amicus curiae brief as an unauthorized filing. Having carefully reviewed the record, law, and briefs, we affirm in part

and reverse in part. Remand for further proceedings is unnecessary, however, due to the unique circumstances of this appeal.

## FACTS AND PROCEDURAL HISTORY

Harris was employed as a certified nursing assistant for Mercy Home Health ("Mercy"), providing daily in-home health and hospice care to 4 or 5 patients in the area surrounding Paducah, Kentucky. She worked 30 to 40 hours per week at an hourly wage. Harris also received mileage reimbursement for travel in between patient visits.

On April 27, 2022, Harris strained her right shoulder while repositioning a patient. Later that day, she also injured her lower back while assisting another patient in and out of the shower. She sought medical attention for her work-related complaints from Cody Sexton, APRN, at Harness Health Partners on May 2, 2022, and was advised to remain off work. Eventually, she was referred to Dr. Spencer Romine at The Orthopedic Institute of Western Kentucky, who limited his treatment to the shoulder injury while referring Harris to his associate, Dr. K. Brandon Strenge, for treatment of the lower back injury. She was also treated by Dr. Ferdinand Salvacion, a pain management specialist. Over the course of her treatment, Harris received medication, injections, and physical therapy.

On January 27, 2023, Dr. Darshan Shah performed an independent medical evaluation of Harris's right shoulder and lower back at the behest of Mercy's insurance carrier, CompMC/CCMSI. Based on physical findings and review of Harris's medical history and records, Dr. Shah opined Harris's work-

2

related trauma had caused a mere temporary aggravation of a pre-existing degenerative back condition.  He also concluded that the injury to Harris's right shoulder was temporary and had fully resolved.  Dr. Shah further opined Harris required no further medical treatment and concluded she was capable of returning to regular work duties without restrictions.

Shortly thereafter, Mercy's carrier terminated further payment of any additional temporary total disability ("TTD") income benefits or medical expenses.  Relevant to the present appeal, the carrier specifically denied payment of an outstanding medical bill submitted by Dr. Strenge's office in the amount of $294.75.

Mercy ultimately terminated Harris's employment, and in May 2023, she began working for Shawnee Senior Living, assisting residents perform daily activities.  Harris earned more per week working at Shawnee Senior Living compared to her prior employment with Mercy.

On October 17, 2023, Harris filed her Form 101 application for workers' compensation benefits for the injuries to her right shoulder and lower back.  Mercy filed a timely response denying liability.

On February 8, 2024, Dr. Jeffrey N. Fadel performed an independent medical examination upon Harris.  He opined she had sustained work-related right shoulder and lower back injuries and had remained temporarily totally disabled from May 2, 2022, until reaching maximum medical improvement on April 23, 2023.  He assigned a 12% impairment rating relative to both her right shoulder and lower back conditions pursuant to the AMA Guides.  Dr. Fadel

3

also recommended several permanent restrictions including no standing in one location for more than 30 minutes at a time; no walking continuously for more than 15 minutes before a 5-minute sit-down recovery time; no repetitive stair climbing at all; no lifting more than 20 pounds from floor to waist and that only occasionally;  no carrying more than 25 pounds for short distances and that again only occasionally; no climbing ladders; no crawling or stooping; no pushing or pulling more than 40 pounds and that only occasionally.

On March 23, 2024, Dr. Austin Nadet performed an independent medical examination upon Harris.  He concluded her alleged work-related injuries qualified for no permanent impairment rating under the AMA Guides and would assign no restrictions upon her return to regular work activities.

The ALJ conducted a benefit review conference on June 18, 2024, and a final hearing on July 17, 2024.  After reviewing the lay and medical evidence, the ALJ entered an opinion, award, and order on September 11, 2024.  The ALJ dismissed Harris's claim for further income or medical benefits relative to her right shoulder injury, but determined she qualified for a 12% whole body impairment rating relative to her work-related lower back injury. The ALJ proceeded to award TTD benefits, permanent partial disability benefits based upon an average weekly wage of $422.66, and medical benefits.  The ALJ declined to award benefits for the unpaid medical bill upon a finding that it was untimely under KRS[1] 342.020(4).

_____

[1] Kentucky Revised Statutes.

Harris filed a petition for reconsideration arguing the ALJ erred by failing to include mileage reimbursements in the calculation of her average weekly wage. She also argued the ALJ erred in denying payment of Dr. Strenge's medical bill, asserting the 45-day rule contained in KRS 342.020(4) does not apply when the carrier rejects its liability for an injured worker's claim.

The ALJ denied the petition for reconsideration on September 17, 2024, and Harris appealed to the Board which affirmed in an opinion entered on December 20, 2024. On January 21, 2025, she filed a petition for review in the Court of Appeals, and Mercy filed its response to Harris's petition on February 7, 2025.

On February 4, 2025, Kentucky Employers' Mutual Insurance ("KEMI") tendered a motion for leave to file an amicus brief by registered mail, but the Court of Appeals rejected the motion on February 10, 2025, refusing to consider its merits, asserting it represented an unauthorized filing.

Even so, after KEMI had tendered its motion for leave, which supported Harris's position on the inapplicability of the 45-day rule to her unpaid medical bills, Mercy voluntarily paid the outstanding bill to the provider and then filed a motion to dismiss the portion of Harris's appeal relative to this issue.

On March 21, 2025, the Court of Appeals entered an order passing the motion to dismiss to the panel considering the merits of the appeal. An opinion and order was thereafter rendered which affirmed the ALJ and Board relative to Harris's travel reimbursements not being included in the calculation of her

5

average weekly wage, but dismissed her appeal regarding nonpayment of Dr. Strenge's outstanding medical bill as moot. This appeal followed.

## LAW AND ANALYSIS

### A. Standard of Review.

The standard of review in workers' compensation matters is well-established. An injured worker "bears the burden of proof and the risk of nonpersuasion before the fact-finder with regard to every element of a workers' compensation claim." *Lexington Fayette Urban Cnty Gov't v. Gosper*, 671 S.W.3d 184, 198 (Ky. 2023). The ALJ functions "the same as a trial court trying the case without a jury." *Id.* (quoting *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687 (Ky. 1992)).

As the finder of fact, the ALJ, "and not the reviewing court, has the authority to determine the quality, character and substance of the evidence presented." *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). "Moreover, an ALJ has sole discretion to decide whom and what to believe, and may reject any testimony and believe or disbelieve various parts of the evidence, regardless of whether it comes from the same witness or the same adversary party's total proof." *Gosper*, 671 S.W.3d at 198 (quoting *Bowerman v. Black Equip. Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009)).

We will not disturb the ALJ's findings of fact unless they are clearly erroneous, but this Court is bound by neither the ALJ's decisions on questions of law nor the ALJ's interpretation and application of the law to the facts. *Id.* at 199. On such matters, our review proceeds under the de novo standard. *Id.*

6

## B. ALJ properly excluded mileage reimbursements from average weekly wage computation.

Harris first argues the ALJ erred by excluding mileage reimbursements from the calculation of her average weekly wage. We disagree.

The issue of whether the computation of average weekly wages includes mileage reimbursements is a matter of statutory interpretation and the application of law to facts. Therefore, our review is de novo. *Gosper*, 671 S.W.3d at 198.

> KRS 342.140(6) defines "wages" as follows:
>
> The term "wages" as used in this section and KRS 342.143 means, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging, and fuel or similar advantage received from the employer, and gratuities received in the course of employment from others than the employer to the extent the gratuities are reported for income tax purposes.

Similarly, KRS 342.0011(17) defines "wages" in general terms as follows:

> "Wages" means, in addition to money payments for services rendered, the reasonable value of board, rent, housing, lodging, fuel, or similar advantages received from the employer, and gratuities received in the course of employment from persons other than the employer as evidenced by the employee's federal and state tax returns[.]

This Court has interpreted the definition of "wages" under both KRS 342.140(6) and KRS 342.0011(17) to exclude "payment[s] that amount[] to a mere reimbursement of expenses[.]" *Anderson v. Homeless & Hous. COA*, 135 S.W.3d 405, 413 (Ky. 2004). Our holding in *Anderson* tracks Professor Larson's treatment of the wage calculation analysis:

> In computing actual earnings as the beginning point of wage-basis calculations, there should be included not only wages and salary but **any thing of value** received as consideration for the work, as,

7

> for example, tips, bonuses, commissions and room and board, constituting **real economic gain** to the employee. **A car allowance is includable as wage only if it exceeds actual truck, or travel expenses.**

Arthur Larson & Lex K. Larson, 8 *Larson's Workers' Comp. Law* § 93.01[2][a] (2025) (emphasis added) (footnotes omitted).

We conclude the reasoning of *Anderson* applies with equal force to the present appeal. Here, there is no evidence the mileage payments constituted a fixed amount, stipend, performance bonus, or anything other than reimbursements for Harris's actual accrued employment-related travel expenses incurred for driving to and from each patient's residence. Thus, the payments were based on the actual mileage required for the employment-related visits, represented no additional economic gain to Harris, and were properly excluded from calculation of wages as defined under KRS 342.140(6) and KRS 342.0011(17). The ALJ committed no error.

### C. Court of Appeals erred by dismissing appeal in part as moot.

Harris next argues the Court of Appeals erred by dismissing her appeal in part as moot. We agree.

It is well established that "a 'moot case' is one which seeks to get a judgment . . . upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a *then* existing controversy." *Morgan v. Getter*, 441 S.W.3d 94, 98-99 (Ky. 2014) (quoting *Benton v. Clay*, 233 S.W. 1041, 1042 (Ky. 1921)). "The general rule is, and has long been, that 'where, pending an appeal, an event occurs which makes a determination of the

8

question unnecessary or which would render the judgment that might be pronounced ineffectual, the appeal should be dismissed.'" *Id.* at 99.

However, this Court has recognized the "voluntary cessation" exception to the mootness rule and explained:

> Under that exception, an appeal may proceed notwithstanding the defendant's voluntary cessation of the challenged action, a primary concern being that a dismissal in those circumstances leaves the defendant "free to return to his old ways." 345 U.S. at 632[.] *See also Norma Faye Pyles Lynch Family Purpose LLC v. Putnam Cnty.*, 301 S.W.3d 196 (Tenn. 2009) (collecting state cases applying or considering the voluntary cessation exception). A related concern is that parties should not be free to manipulate mootness so as to frustrate, after the investment of significant judicial resources, the "public interest in having the legality of the[ir] practices settled." *W.T. Grant*, 345 U.S. at 632[.] *See also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000); *City of Erie v. Pap's A.M.*, 529 U.S. 277[.] *And see,* Matthew I. Hall, *The Partially Prudential Doctrine Of Mootness*, 77 Geo. Wash. L.Rev. 562, 596–98 (2009) (discussing this aspect of the voluntary cessation exception). In light of this concern, this Court has issued opinions notwithstanding eleventh-hour settlements rendering, and often deliberately meant to render, the cases moot.

*Id.* at 99-100. The voluntary cessation exception is the converse of the longstanding voluntary dismissal rule which permits an appellant to "voluntarily dismiss his appeal if it does not adversely affect the rights of other parties." *Bd. of Ed. of Berea v. Muncy*, 239 S.W.2d 471, 473 (Ky. 1951); *see also Smith v. Jones,* 11 S.W.2d 937, 939 (Ky. 1928); 5 C.J.S. *Appeal & Error* § 750 (2025).

For a defendant's voluntary conduct to moot a case, it must be "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Beshear v. Goodwood Brewing Co., LLC*, 635 S.W.3d 788,

9

800 (Ky. 2021) (quoting *Friends of the Earth*, 528 U.S. at 189). This stringent standard places a heavy burden on the party asserting mootness to persuade "the court that the challenged conduct cannot reasonably be expected to start up again[.]" *Id.* (quoting *Friends of the Earth*, 528 U.S. at 189).

Here, Mercy disputed the compensability of the medical bill from the outset and prevailed on this issue before the ALJ and the Board. Mercy continued to dispute the compensability of the medical bill in its responsive brief before the Court of Appeals. Mercy's voluntary payment of the bill to the medical provider occurred only after KEMI tendered an amicus brief in support of Harris's position. Harris had no control over the timing of Mercy's decision to make a voluntary payment to a nonparty and further responded in opposition to Mercy's motion for partial dismissal of her appeal.

The intent of KRS 342.020 is to "provide[] for the **prompt** payment of medical bills." *Peabody Coal Co. v. Goforth*, 857 S.W.2d 167, 168 (Ky. 1993) (emphasis added). Thus, we cannot conclude Mercy's eleventh-hour voluntary payment fully resolved the dispute over Harris's entitlement to *prompt* payment.

Moreover, on these facts, we perceive no assurance that the allegedly wrongful practice of denying claims for unpaid medical benefits will discontinue. This Court cannot countenance a party's unilateral action to evade appellate review in these circumstances because such an imprimatur would be tantamount to carte blanche approval for other employers to pursue similar tactics with other claims, causing unnecessary waste of judicial

10

resources, strain upon the health insurance system, and most importantly

potential mistreatment of injured employees who may have been wrongfully

deprived of workers' compensation benefits. Therefore, we conclude the

voluntary cessation exception to the mootness doctrine applies relative to the

current controversy and turn to the merits of Harris's appeal on this issue.

### D. ALJ erred by declining to award benefits for the unpaid medical bill.

Harris next argues the ALJ erred by declining to award benefits relative

to the unpaid medical bill. We agree.

KRS 342.020(4) states:

> In the absence of designation of a managed health care system by the employer, the employee may select medical providers to treat his injury or occupational disease. Even if the employer has designated a managed health care system, the injured employee may elect to continue treating with a physician who provided emergency medical care or treatment to the employee. The employer, insurer, or payment obligor acting on behalf of the employer, shall make all payments for services rendered to an employee directly to the provider of the services within thirty (30) days of receipt of a statement for services. The commissioner shall promulgate administrative regulations establishing conditions under which the thirty (30) day period for payment may be tolled. **The provider of medical services shall submit the statement for services within forty-five (45) days of the day treatment is initiated and every forty-five (45) days thereafter, if appropriate, as long as medical services are rendered.** Except as provided in subsection (7) of this section, in no event shall a medical fee exceed the limitations of an adopted medical fee schedule or other limitations contained in KRS 342.035, whichever is lower. The commissioner may promulgate administrative regulations establishing the form and content of a statement for services and procedures by which disputes relative to the necessity, effectiveness, frequency, and cost of services may be resolved.

11

(Emphasis added). The above-emphasized provision of KRS 342.020(4) is commonly referred to as "the 45-day rule." *Farley v. P&P Construction, Inc.*, 677 S.W.3d 415, 419 (Ky. 2023).

In *Farley*, we held the 45-day rule

> is unambiguous and requires a provider to submit billing statements within 45 days after treatment has been provided. The mandate to providers is unmistakable in its clarity. The plain and forthright language of the statute affords no other construction but that the provider "shall" submit the statement for services within forty-five days of the day treatment.

*Id.* at 420. "[T]he date of treatment is the determinative factor and is this date that triggers the start of the 45-day period for a provider to submit its billing to the employer or insurer." *Id.* Thus, "medical providers *are* required to submit their billings within 45-days of service, regardless of whether a determination of liability has been made, and employers and their insurance carriers are not responsible for payment of billings submitted to them after the 45-day period." *Id.* at 417.

However, *Farley* explicitly refrained from addressing "the applicability or potential implementation of 803 KAR[2] 25:096 § 6[.]" *Id.* at 423. This administrative regulation provides, "[i]f the medical services provider fails to submit a statement for services as required by KRS 342.020(4) without reasonable grounds, the medical bills shall not be compensable."

---

[2] Kentucky Administrative Regulations.

In an unpublished decision,[3] we have previously examined 803 KAR 25:096 § 6 and held the denial of a claim for medical benefits constituted reasonable grounds to excuse noncompliance with the 45-day rule. *Wolford & Wethington Lumber v. Derringer*, 2009–SC–000620–WC, 2010 WL 3377731, at *6 (Ky. Aug. 26, 2010). The Court succinctly explained, "[k]nowledge of an employer's assertion that the condition being treated is non-work-related constitutes reasonable grounds for failing to direct a provider to submit bills for treating the condition to the employer or for failing to seek reimbursement for bills paid personally." *Id.*

The reasoning of *Wolford* is sound, and we adopt its analysis of 803 KAR 25:096 § 6 here. Mercy and its carrier denied Harris's claim for benefits. The denial of Harris's claim distinguishes the present appeal from *Farley* wherein the employer and its carrier accepted the injured worker's claim. *Farley*, 677 S.W.3d at 417. Moreover, the denial of a claim constitutes a reasonable ground for noncompliance because such denial clearly signals the employer will not voluntarily pay any statement for services that it receives whether they are submitted within 45 days or not until an ALJ makes an award of benefits to the injured worker. In other words, the submission of a statement for services by a medical provider within 45 days from the date of treatment is an exercise

---

[3] We acknowledge that "unpublished cases as a rule are not meant to be cited as official pronouncements of what the law is[;]" however, "it would be disingenuous to say that this Court is not bound by oath and fidelity to consistently apply the law in both published and unpublished decisions." *Taylor v. Commonwealth*, 671 S.W.3d 36, 42 (Ky. 2023). Here, our research has not uncovered any published decisions of this Court dealing with 803 KAR 25:096 § 6.

in futility where the employer denies the compensability of the claim and denies liability for the alleged work-related injury.

We further observe the application of the *Wolford* rationale does not result in prejudice to the employer in contested cases because

> Chapter 342 does provide a deadline for submitting pre-award medical expenses. KRS 342.270(1) requires a worker to raise all known causes of action against the employer during the pendency of the application for benefits. It would bar compensation for outstanding medical expenses that a worker failed to raise during the pendency of the underlying claim.

*Wolford*, 2010 WL 3377731, at *7. Based on the foregoing, we conclude the ALJ erred by failing to award benefits for the unpaid medical bill. Remand is unnecessary, however, because the bill has since been paid.

### E. Court of Appeals erred by rejecting motion for leave to file amicus brief as an unauthorized filing.

Finally, Harris argues the Court of Appeals erred by rejecting KEMI's motion for leave to file an amicus brief as an unauthorized filing. At the outset, we perceive no basis for Harris to assert standing to litigate KEMI's entitlement to file its motion. However, KEMI has raised the issue in its amicus brief before this Court. Moreover, the allegation that the Court of Appeals is improperly refusing to file amicus briefs in workers' compensation appeals implicates the supervisory authority of this Court in matters affecting the orderly and effective administration of justice. *See Ex parte Farley*, 570 S.W.2d 617, 621 (Ky. 1978).

The Court of Appeals rejected KEMI's attempt to file a motion for leave to file an amicus brief in a document styled "NOTICE OF UNAUTHORIZED DOCUMENT" which was signed by the Clerk of the Court. The notice stated:

14

PER RAP[4] 34(A), AMICUS CURIAE MAY PARTICIPATE IN APPEALS ONLY AS SET FORTH IN THIS RULE.  RAP 34(B)(2) DIRECTS THAT A MOTION FOR LEAVE TO FILE AN AMICUS BRIEF SHALL BE FILED WITHIN FIFTEEN (15) DAYS OF THE FILING OF THE APPELLANT'S BRIEF.  NO APPELLANT'S BRIEF HAS BEEN FILED IN THE ABOVE-STYLED CASE. AS SUCH, A MOTION FOR LEAVE TO FILE AN AMICUS BRIEF IS UNAUTHORIZED.

KEMI represents that it attempted to clarify the matter with the Court of Appeals over the telephone and was informed by an unnamed clerk that the Court of Appeals does not accept amicus briefs in workers' compensation appeals because the workers' compensation appellants file a "petition for review" and not a "brief."  The Court of Appeals' interpretation of the appellate rules is erroneous.

RAP 34(A) states, "[a]micus curiae may participate in appeals only as set forth in this rule[.]"  RAP 34(B)(2) further provides, "[a] motion to file an amicus curiae brief must be filed no later than 15 days from the date on which the appellant's brief is filed, or due to be filed, whichever is later, regardless of whether the amicus curiae advocates the position of the appellant or appellee."

The term "brief" is not specifically defined by our appellate rules or caselaw.  While a petition for review in a workers' compensation appeal under RAP 49 is not interchangeable with ordinary appellate briefs under RAP 30-32, they are functionally equivalent.  The differences between petitions for review and ordinary appellate briefs merely pertain to the contingent properties of

---

[4] Kentucky Rules of Appellate Procedure.

format, content, and organization. They do not denominate the essential nature of a brief as an operative legal document.

For example, in ordinary legal parlance, a "brief" is understood to mean:

> A written statement setting out the legal contentions of a party in litigation, esp. on appeal; a document prepared by counsel as the basis for arguing a case, consisting of legal and factual arguments and the authorities in support of them. — Also termed legal brief; brief of argument.

*Brief, Black's Law Dictionary* (12th ed. 2024). Thus, a petition for review is clearly a "brief" within the meaning of RAP 34: it is simply a particular type of brief commensurate with the unique administrative context of workers' compensation appeals. Thus, the Court of Appeals erred by rejecting KEMI's motion for leave to file its amicus brief as an unauthorized filing. We express no opinion on whether such leave should have ultimately been granted.

## CONCLUSION

For the foregoing reasons, the decision of the Court of Appeals is hereby affirmed in part and reversed in part.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Wayne C. Daub

COUNSEL FOR APPELLEE:

Jeremy D. McGraw
Pohl Aubrey Gray, P.S.C.

16

COUNSEL FOR AMICUS CURIAE, KENTUCKY
EMPLOYERS' MUTUAL INSURANCE:

Brent E. Dye
O'Bryan, Brown & Toner, PLLC


ADMINISTRATIVE LAW JUDGE:

Hon. Peter J. Naake


WORKERS COMPENSATION BOARD:

Michael Wayne Alvey
Chairman